The opinion of the Court was delivered by
Whitner, J.
This proceeding involves an unpleasant controversy between parents for the custody of an infant child. The father asserts his better title, and by habeas corpus demands the possession.
The legal power of the father over his infant child, irrespective of age and the claims of the mother, has been strongly pressed by the counsel for the petitioner. Many cases have been adjudged, principally in England, going far to deny to the common law Judge any discretion on the subject; whilst others, in conceding a discretion, have so limited and restrained it as almost to amount to a denial.
These cases and principles may be found cited in Forsyth on the Custody of Infants, 11, 12, 65 and 67.
Lord Mansfield, in 1763, in Delaval's case, 3 Burr. 1434, laid down a safe rule, which has been recognized by our own case of Kottman, 2 Hill, 363 — "That in cases of writs of habeas *347 corpus directed to bring up infants, the Court is bound, ex debito justicice, to set the infant free from cm improper restraint, but they are not bound to deliver them over to any body, nor to give them any privilege. This must be left to their discretion, according to the circumstances that shall appear before them.” And again, some ten years after, in Blisset’s case, Loft’s Rep. 748, he held, “ that if the parties disagreed, the Court will do what shall appear best for the child.” Yet, as above stated, the principle and practice became more and more stringent. Those who choose to consult the authorities will find, in the order of succession, the Courts proceeded from DeManneville's case, 5 East, 221, when the paramount title of the father became the favorite doctrine, although the welfare of the child might require the mother’s custody, decided, I think, in 1804, down to the celebrated case of Greenhill, 4 Ad. and El. 624, which.so shocked public sentiment, that, under the lead of distinguished jurists of that day, an Act of Parliament was adopted more in consonance with the dictates of humanity and sound reason, whereby the feelings and rights of the injured mother were taken into the account. The decision was in 1836 and the Act in 1839. A note in Forsyth, 69, as a just commentary on that case, furnishes the fact, that Lord Denman, C. J., said, in debate in the House of Lords, he himself having been one of the Judges, that “ there was not a Judge concerned in it who-had not felt ashamed of the state of the law, and that it was such as to render it odious in the eyes of the country.” He further said, “ the effect was, in that case, to enable the father to take his children from his young and blameless wife, and place them in charge of a woman with whom he cohabited.”
It is matter of congratulation that but little additional weight has been given to this class of cases by American Judges. In this State we are committed to no such extreme doctrine, and the day of danger, I trust, has passed. Pursuing the rule of Mansfield, we have heretofore sought to free the infant from improper restraint; hence, at the age of choice, the infant is instructed and advised, and, if need be, protected in his choice. *348 Judge Story says, in 3 Mason, 382 — “It is an entire mistake to suppose that the Court is bound to deliver over the infant to its father, or that the latter has an absolute vested right in the custody.” The wise principles of earlier English cases have been liberally incorporated into our American cases, in the several States — that, “It is the benefit and welfare of the infant, to which the attention of the Court ought principally to be directed.” 13 Johns. R. 418. In these delicate and difficult questions, what safer principle can be adopted ? What parent can object that the welfare of the child shall be deemed paramount to the claims of either ? This is the profession made by each parent, and neither should condemn the practical operation of the rule. Judicial discretion should aid the infant in forming a proper judgment, and should be substituted, where, from age or mental imbecility, such election cannot be exercised.
In this case no such choice was submitted to the child — ■ being within the age of nurture, she was not within the rule. Beginning with the instincts of our nature, and tracing the history of this painful case from its commencement to the point at which we are called to decide, having regard to the character of the parties, with all the attendant circumstances, such a review furnishes material fully justifying the sound discretion which prompted the order made on the Circuit. The ruling and analogies to be found in a host of American cases, will fully vindicate this judgment. I will not further protract this opinion, by reference in detail to the principles and circumstances of each. The case of D’Hauteville vs. Sears and others, published in pamphlet, will be found to the point, and to contain a very thorough examination and exact recital of English and American cases, though I have not, on this occasion, enjoyed the opportunity of this reference. The case of The People vs. Mercein, 25 Wend. 64, will also be found valuable as authority, and yet more especially for its references.
Although I have carefully avoided a narration of the facts which immediately led to the separation, that unnecessary wounds may be spared and the chances of reconciliation not *349 rendered hopeless, yet it is due to the case to say, in our judgment the wife was justifiable in leaving her home and again relying on the protection of a father’s roof. The age and sex of the child, the situation of the mother, and her superior fitness to train and provide, with the far greater facilities promotive of the best interests of the child furnished and enjoyed in its present custody, all suggest themselves to the mind in vindication of the order.
A single remark as to the future, in reference to this unfortunate couple, may not be amiss. Although the hands of this Court may not be tied as to any further order, if a proper case should arise, hardly now to be contemplated, this petitioner should see that he is engaged in a fruitless enterprise, without there arises a material change in circumstances. His threat to annoy, by continued litigation, can only be exceeded in rashness by these repeated evidences of his purpose to execute. The best interests of himself, his wife and his child, should prompt him to a very different course of conduct.
The motion of the petitioner to reverse the order of the Circuit Judge, is dismissed.
O’Neall, Wardlaw, Frost, Withers and Glover, JJ., concurred.

Motion dismissed.