## HERBERT STELGES v. MARY F. SIMMONS.

### (Filed 10 November, 1915.)

1. **Wills—Probate—Relating Back—Judgment—Execution Sales—Innocent Purchaser—Deeds and Conveyances—"Color"—Limitation of Actions.**

   The principle that a proceeding to establish a last will is a proceeding *in rem*, and that when the will is established it relates back to the death of the deceased owner and vests the title to the property in his devisee, cannot operate to affect the title to lands acquired by an innocent purchaser for value without notice, who has acquired his deed under a judgment against the one under whom his adversary party claims title, and has been in possession of the lands for more than seven years under his deed as color of title.

2. **Escheat—Judgments—Execution Sales—Deeds and Conveyances—Laches—Innocent Persons—Equity.**

   Where a judgment final has been obtained by default of an answer in the course and practice of the court and regular upon its face in favor of the University of North Carolina, by escheat, against the husband of the deceased owner of the land, who had died without issue born alive, and more than seven years thereafter the husband sets up a will in his favor from his deceased wife, and claims the lands thereunder from the grantee of a purchaser at the execution sale, who, with his grantor, have been in possession for more than seven years under their deeds, the will cannot relate back to the death of the testator as against the title of the purchasers, being free from laches, for where one of two innocent persons must suffer, the one who has not been guilty of laches will be protected.

3. **Same—Default—Estoppel.**

   Where a judgment by default final has been rendered, for the want of an answer, in the course and practice of the courts in proceedings regular upon their face, in an action to recover lands, the complaint alleging that the plaintiff is the owner thereof, and no motion in the cause to have it set aside for excusable neglect has been made within twelve months and no independent action has been brought to set aside the judgment for fraud, it will estop the defendant from asserting any right he may have to the land.

4. **Limitation of Actions—Heirs at Law—Wills—Devisees—Interpretation of Statutes.**

   Revisal, sec. 369, suspending the statute of limitations during controversy over the probate of a will "when no administrator is appointed" applies only to protect creditors, there being no one for them to sue.

WALKER and HOKE, JJ., concur in the result.

APPEAL by plaintiff from *Rountree, J.,* at the June Term, 1915, of NEW HANOVER.

*S. M. Empie and E. K. Bryan for plaintiff.*
*H. E. Faison, Isaac C. Wright and H. McClammy for defendant.*

CLARK, C. J. Isaac Carr and Neely Carr were husband and wife, the latter being the owner and in possession of the land in controversy in

Wilmington. She died without issue or any relative, in 1896. No will was found or probated. There being no proceeding to sell her land to make assets and no suggestion of any debts, on 9 January, 1904, the University of North Carolina brought an action in ejectment in New Hanover for this tract of land against Isaac Carr, who was in possession and on whom the summons was personally served. The complaint was duly filed alleging that the University was the owner in fee and entitled to immediate possession of the property in controversy (the decedent not having had issue born alive) and that the defendant unlawfully and wrongfully withheld the possession from the plaintiff. Judgment by default final was rendered at February Term, 1904, adjudging the plaintiff to be the owner of the land and directing a writ of possession to issue under which Isaac Carr was dispossessed, and plaintiff in that action was put into possession on 11 July, 1904. The University executed a deed to W. H. Shearin for said land in consideration of $410, who on 19 October, 1904, conveyed the same to the defendant, Mary F. Simmons, for full value, by warranty deed. She has been in possession ever since. This action in ejectment was begun against her 10 August, 1914, nine years nine months and twenty-one days after the defendant took possession under her deed, and more than ten years after the University was put into possession. On 16 March, 1905, more than a year after the judgment declaring the University the owner of the land, and more than a year after Isaac Carr was dispossessed and five months after the purchase of the land by this defendant for full value, Isaac Carr brought a proceeding before the clerk to establish an alleged lost will of his wife devising this land to him. The defendant appeared, pleaded that Isaac Carr was estopped to set up a will or claim any interest in the land by the aforesaid judgment of the University against Isaac Carr, and that the laches of Isaac Carr in waiting till Mary F. Simmons had bought and paid for the land, or to give any notice of it, was a bar to the proceeding so far as Mary F. Simmons and the University were concerned. This plea was sustained by O. H. Allen, J., and no appeal was taken. In 1907 Isaac Carr died, leaving a will under which the plaintiff claims. In 1913 judgment was rendered setting up the lost will of Neely Carr, against whom it does not appear, as she left no issue or collateral kin.

The plaintiff, devisee of Isaac Carr, but not related to Neely Carr in any way, brought this action 10 August, 1914, eighteen years after her death. The court properly rendered judgment dismissing the action, for several reasons:

1. The defendant and those under whom she claims have been in adverse possession under known and visible metes and bounds, openly and notoriously claiming the same under color of the title for more than

ten years. It was admitted that the title was out of the State and in Neely Carr.

2. The defendant was an innocent purchaser for value of said land without notice of any defect in the title.

The plaintiff's claim is that a proceeding to establish a lost will is a proceeding *in rem,* and that when the will was established in 1913 it related back to the death of Neely Carr and vested the title in Isaac Carr, though he was dead, and through his devise, in this plaintiff; but this cannot divest defendant's title. In *Harrison v. Hargrove,* 120 N. C., 96, it was held: "Where a court of competent jurisdiction of the subject-matter recites in the judgment or decree that service of the summons has been made upon the defendants, who are subject to the jurisdiction of the court, and the judgment is regular on its face, an innocent purchaser under such judgment will be protected even though it should be afterwards set aside on the ground that in point of fact there had been no service of process, and the judgment is conclusive against all persons."

In this case service was personally made upon Isaac Carr. He made no defense and the judgment was regularly entered, and under the writ of possession issued thereon the plaintiff therein, the University, was put in possession, and through *mesne* conveyances the defendant, Mary F. Simmons, for full value and without notice, bought the land, and has ever since been in possession. She has been guilty of no laches, but Isaac Carr was. He delayed from 1896 to 1905 to set up the will (if there was one) and did not defend in 1904 the action alleging that there was no will. The rule of justice and of law is that when one of two innocent persons must suffer the one who has been guilty of no laches is protected.

3. The plaintiff is estopped to claim title to this land by the judgment of *Ferguson, J.,* at February Term, 1904, and by the judgment of *Allen, J.,* which held that such judgment of *Ferguson, J.,* was an estoppel. A judgment is *res judicata* of all the points raised by the pleadings or which might properly be predicated upon them. *Tyler v. Capehart,* 125 N. C., 64, and citations to that case in the Anno. Ed. This is true, even though the judgment is by default final, *Junge v. McKnight,* 137 N. C., 285, and this, even though the complaint in a suit be not verified, if the defendant gives no defense bond. *Patrick v. Dunn,* 162 N. C., 19.

The fact that the University obtained judgment under an escheat and that the plaintiff is now setting up the plea of a lost will are purely incidental matters which can in no wise affect the real principle here involved upon which the stability of all judgments rests, to wit, that when the defendant (Isaac Carr) was served with summons and the

complaint alleged that as against him the plaintiff (the University) was entitled to the land in controversy and judgment was duly entered thereon, Isaac Carr and all those claiming under him thereafter are bound by that judgment, which was rendered in due course. It could only be set aside within twelve months for excusable neglect or by an independent action for fraud. This has not been attempted. The judgment was regular in every respect. No fraud has been alleged. The present plaintiff alleges that Isaac Carr had a defense if he had known it. The same plea, if valid, could be set up against any other judgment. Isaac Carr was guilty of laches, for his wife died in 1896, and eight years had passed before the judgment was rendered. The defendant has been guilty of no laches. She paid full value for the land without notice of any defect in the title, and relying upon the integrity of a judgment which adjudicated the title and possession of the realty, and is entitled to the same protection as a purchaser under any other judgment, regularly taken in due course. She should not now be deprived of her property, bought upon the faith of a judgment adjudicating the title in those under whom she claims, and against the party under whom the plaintiff claims. This would be an injustice to her and would grievously shake the faith to be reposed in the judgments of the courts regularly taken in due course.

The judgment of February, 1904, was conclusive and is unimpeachable that the University had the title and was entitled to possession of the land in controversy, and that Isaac Carr did not have the title. If he had the defense that there was a will devising the title to him, it was his duty then to set it up. He did not do so, but submitted to the judgment that there was no will. There being no fraud nor excusable neglect, the devisee of Isaac Carr cannot now set up the claim that in fact at that time and for eight years prior thereto Isaac Carr had the title to the land. Whenever the will was probated his title dates back to the death of his wife in 1896, but this cannot invalidate the judgment that in February, 1904, the title was in the University.

It is true that the judgment of 1904 was judgment by default final. But it was regular in all respects, taken in due course, upon a verified complaint alleging that the University was owner in fee of the land described and that the possession was wrongfully withheld by Isaac Carr, the defendant. This put the title in issue and operated as an estoppel in any subsequent action by Isaac Carr, or by this plaintiff claiming under him, to recover the land from the plaintiff in that action or from this defendant who claims under it. Such judgment binds parties and privies. This proposition is too well established to be controverted. It is fully discussed in *Turnage v. Joyner,* 145 N. C., 81, with full citation of authorities, and that case has been cited since with approval. See Anno. Ed.

STELGES *v.* SIMMONS.

This is an action of ejectment, and stripping the case of its purely incidental and adventitious features that the land was adjudged to be an escheat, and that a lost will has been set up, the defendant, who is a purchaser for value and without notice, not only is justly entitled to protection as such, but there are two insuperable bars to recovery by this plaintiff:

1. She has pleaded and is entitled to protection by the fact that she "has been in the open, notorious and adverse possession of the land and premises set out in the complaint under known and visible boundaries for more than seven years, under color of title, next before the commencement of this action, and she pleads the seven years adverse possession," and this plea is good against all the world.

2. She is further entitled to protection against this plaintiff because he claims under Isaac Carr, and the defendant claims as *mesne* purchaser for value under a judgment entered in due course at February Term, 1904, in which judgment it was adjudged that Isaac Carr did not have title to this property and wrongfully held possession against the plaintiff in that action, who was adjudged to have the true title, and that by writ of possession said plaintiff in that action, under whom the defendant holds, was put into possession. The defendant is therefore secured by adverse possession and further by a previous adjudication of the title in favor of the party under whom she derives title and against the party under whom the plaintiff seeks to recover.

Revisal, sec. 369, suspending the statute of limitations during controversy over the probate of a will "when no administrator is appointed," applies only to protect the creditors of the estate, because there is no one to sue. It does not apply to the heirs at law or devisees to nullify the protection given every one in adverse possession of realty for seven years under color of title, nor to invalidate a judgment rendered against the heir or devisee that the title to the property is in another. Isaac Carr for more than seven years made no movement to set up the will, and is bound by the judgment against him that there was no will.

This is not the case where an unknown heir or devisee is discovered (though even he would be barred by seven years adverse possession), who, not claiming under Isaac Carr, would not be bound by the judgment against him; but the plaintiff claims under Isaac Carr and is concluded by the judgment against him.

The judgment of *Rountree, J.,* upon the facts agreed, that the plaintiff is not entitled to recover, and dismissing the action at the cost of the plaintiff, is

Affirmed.

WALKER, J., and HOKE, J., concur in the result.