COUNTY OF FRANKLIN v. MRS. C. A. JONES AND HUSBAND, C. A. JONES; MRS. LAURA JONES WILKES AND HUSBAND, JIMMIE WILKES; MRS. HETTIE JONES DENTON AND HUSBAND, BUSTER DENTON; MRS. HATTIE JONES JEANES AND HUSBAND, E. L. JEANES; MRS. MATTIE JONES PERRY AND HUSBAND, ELBERT PERRY; ZOLLIE JONES AND WIFE, MRS. MARGARET P. JONES; MRS. MARY JONES DENTON AND HUSBAND, CREAMEY DENTON; DAVIS JONES AND WIFE, MRS. AUDREY C. JONES; MARTHA JONES, UNMARRIED, AND BLONIE JONES, UNMARRIED, AND JAMES E. MALONE, JR., GUARDIAN AD LITEM OF JIMMIE WILKES, NON COMPOS MENTIS, AND THE UNBORN CHILDREN OR HEIRS IN POSSE OF MRS. EMMA JANE JONES; AND JAMES E. MALONE, JR., GUARDIAN AD LITEM OF DAVIS JONES, MARTHA JONES AND BLONIE JONES, MINORS.

(Filed 11 January, 1957.)

**1. Taxation § 40c—**

Where the true owners are served with summons in an action to foreclose a tax lien, the fact that the land had not been properly listed in the name of the true owners does not defeat the jurisdiction of the court. G.S. 105-391.

**2. Same: Taxation § 42—**

The fact that sale of land for taxes was postponed for six days, rather than postponed from day to day for a period of six days, does not render the sale void, but is at most an irregularity which does not affect the title of the purchaser, C.S. 690, C.S. 692, the sale not being held on a Sunday, since there is nothing in the record to give the purchaser notice.

**3. Judicial Sales § 5—**

Confirmation of a judicial sale by a court of competent jurisdiction with knowledge of an irregularity ends the right to complain of the defect.

**4. Infants § 15½—**

In an action against an infant, the failure to appoint a guardian *ad litem* is an irregularity, but is not a jurisdictional defect, and therefore judgment rendered against the infant is not void.

**5. Judgments § 27d—**

One who seeks relief from an irregular judgment must show that he has been prejudiced by the judgment and that he has acted diligently.

**6. Taxation §§ 40c, 42—Decree of confirmation of tax sale may not be attacked for mere irregularity except upon showing of prejudice and diligence.**

This suit was instituted to sell lands to satisfy a lien for taxes. After interlocutory order of foreclosure was entered, the commissioner, upon learning of the minority of some of the parties, continued the sale for six days, and reported to the clerk, who thereupon appointed as guardian *ad litem* for the minors the same guardian who represented persons *in posse*. The guardian *ad litem* filed answer and the sale was held at the expiration of the six-day period. Thereafter judgment of confirmation was entered upon the court's finding *inter alia* that the price bid was just and adequate and that the sale should be confirmed. *Held:* The sale was not void, and judgment granting motion in the cause to set aside the decree of confirmation some five years after its rendition without a showing of prejudice to and the exercise of due diligence by movants, is error.

**7. Same—**

Failure to list land for taxation does not relieve the land from liability for taxes but limits the period for which liability can be imposed to five years.

**8. Judicial Sales § 7—**

The purchaser at a judicial sale is the equitable owner, and the decree of confirmation entered by a court of competent jurisdiction may not be set aside as to the purchaser when the proceedings are merely irregular except for mistake, fraud or collusion.

JOHNSON, J., not sitting.

APPEAL by respondents from *Seawell, J.,* February 1956 Term of FRANKLIN.

In 1945 the County of Franklin brought suit against Mrs. C. A. Jones and other named defendants. The complaint alleged that for the years 1929 to 1943, both inclusive, except for the years 1933 and 1934, a tract of land therein specifically described and containing 34.25 acres was listed for taxation in the name of C. A. Jones, and for the years 1933 and 1934 was listed for taxation in the name of Mrs. C. A. Jones; that said land was listed as 38 acres Massey; that the Board of Commissioners of Franklin County had duly levied taxes thereon for each of said years; that the taxes so levied, amounting to $258.63, were due, unpaid, and constituted a first lien on said land, and in addition to said taxes, taxes had been levied thereon for 1944; that the 1944 taxes were due but not delinquent, and taxes had been levied for 1945, but these taxes were not then due, and the taxes levied for 1944 and 1945 were likewise

a lien on said land. The complaint further alleged "that the title to the said real estate described above is vested in the defendants Laura Jones Wilkes, Hettie Jones Denton, Hattie Jones Jeanes, Mattie Jones Perry, Zollie Jones, Mary Jones Denton, Davis Jones, Martha Jones and Blonie Jones, who, as this plaintiff is informed and believes and therefore avers, are all of the children of Emma Jane Jones, who is the same and identical person as Mrs. C. A. Jones, subject to such interest as may be acquired by the future children of Mrs. C. A. Jones; and this plaintiff respectfully prays the court that on account of the circumstances set forth above, an order be made making the unborn children or heirs *in posse* of Mrs. C. A. Jones, or Emma Jane Jones, parties to this action, and that some suitable person be appointed guardian for the unborn children or heirs *in posse.*" The parties named in the quoted section, with their respective husbands and wives, as well as Mrs. C. A. Jones and husband, C. A. Jones, were personally served with summons and a copy of the complaint. The complaint also alleged, upon information and belief, that all persons having any interest in or lien on the land were named as parties defendant. It alleged that plaintiff was entitled to collect the taxes owing to it and to foreclose its lien as provided in G.S. 105-391.

Upon petition and affidavit that the unborn children of Mrs. C. A. or Emma Jane Jones might have some interest in said land and hence were proper parties and should be duly represented, the clerk, on 23 July 1945, appointed James E. Malone, Jr., who he found to be "a fit, suitable and discreet person," as guardian *ad litem* to represent and defend the interest of the unborn children or heirs *in posse* of Mrs. Emma Jane Jones. Summons issued for Malone as guardian *ad litem* on 23 July and was served on 25 July 1945. On 7 September 1945 Malone, as guardian *ad litem* for the unborn children of Mrs. Emma Jane Jones, filed an answer. He did not deny any of the allegations of the complaint. In answer to section 6 of the complaint he said that he was informed that the lands had been devised to one Massey for life and upon his death to the children of Emma Jane Jones; that Massey was dead, and he concluded as a matter of law that the title was vested in the children of Emma Jane Jones, who were then living. The prayer is that the court render such judgment as might be appropriate in the situation.

On 12 September 1945 the clerk of the Superior Court entered an interlocutory judgment of foreclosure in which he recited that all parties defendant were properly before the court by personal service of process; that the only answer filed was the answer of Malone, guardian *ad litem,* which raised no issue of fact. After these recitals the court adjudged that plaintiff had a tax lien on the land described for the amount asserted. He allowed defendants until 18 September 1945 to

pay the tax and directed if the amount adjudged was not paid by that date that the land be sold on 13 October 1945 by a commissioner therein named.

Prior to noon, 13 October 1945, the time fixed for the sale, Matthews, the commissioner, learned that the defendants Davis Jones, Martha Jones, and Blonie Jones were minors without guardian. At the time fixed for the sale, the commissioner announced that the sale was continued for a period of six days during which time a guardian would be appointed. On 15 October 1945 the commissioner reported to the clerk of the Superior Court of Franklin County that he had continued the sale which was to have been held on 13 October 1945 for a period of six days and petitioned the court for the appointment of guardian *ad litem* for the three minors. Thereupon the clerk appointed James E. Malone, Jr., as guardian *ad litem* for the three minors. On 18 October 1945 Malone, as guardian *ad litem*, filed an answer for the minors. He asserted that no child thereafter born to Emma Jane Jones could have any interest in the land. Otherwise, there was no denial of any of the allegations of the complaint. The guardian *ad litem* for the three minors, having answered *seriatim* the allegations of the complaint, concluded his answer by stating he "submits the interests of his said ward, or wards, to the Court and prays that such orders and decrees may be entered herein as will properly protect any interest, or interests, his said ward or wards may have in the subject matter hereof." On the day he filed his answer as guardian *ad litem* for the minors he wrote on the interlocutory judgment: "I hereby consent to the foregoing Judgment."

On 19 October the commissioner reported that he had that day offered the land for sale at public auction in conformity with the judgment and advertisement, and H. E. Stallings was the highest bidder therefor at $450. The commissioner recommended that the sale be confirmed unless an increased bid was offered within twenty days.

On 19 November 1945 the sale was confirmed and the commissioner was directed to convey the land to Stallings upon payment of his bid. The commissioner was directed from the purchase price to pay the costs, the taxes theretofore adjudged to be owing, including the 1945 tax and "the residue of the said proceeds of sale into the hands of the Clerk of this Court, for disposition according to law. And this cause is retained for further orders." From 1929 through 1945 the title to the lands described in the complaint "was vested in Laura Jones Wilkes, Hettie Jones Jeanes, Mattie Jones Perry, Zollie Jones, Mary Jones Denton, Davis Jones, Martha Jones, and Blonie Jones." In April 1952 Laura Jones Wilkes and the remaining owners of the property filed a motion to set aside the interlocutory judgment of foreclosure of 12 September 1945, the decree of confirmation of 19 November 1945, and the deed to

H. E. Stallings, executed pursuant to said decree for that they were all void.

The clerk, after notice to the interested parties, heard the motion and denied the same. Movants thereupon appealed to the Superior Court. Judge Seawell, on the appeal, made findings of fact based on the judgment roll and affidavits submitted by the respective parties. In addition to the facts hereinabove stated, Judge Seawell found:

"Said lands were not listed in the name of the true owner. A tax scroll for 1933 was signed by Mrs. C. A. Jones, who listed her own land as '38 Ac. Massey.' The remaining tax scrolls relative to this land were unsigned."

"That the lands sought to be foreclosed in this proceeding contained in excess of 30 acres, and in excess of 3 acres tobacco allotment, and contained one dwelling house."

Based on the record and findings made by him, Judge Seawell concluded: "The lands described in the complaint herein were not properly listed for taxation and the Court was without jurisdiction in this case; that the attempted sale of said lands on Saturday, 19 October, 1945, was and is void for failure to properly advertise and continue same from day to day until time of sale; that the interlocutory judgment rendered herein on the 12th day of September, 1945, by the Clerk of the Superior Court of Franklin County was and is void for that: the minor defendants, Davis Jones, Martha Jones and Blonie Jones, were not duly and properly represented before the Court; that the purchase price of said lands was unjust and inadequate." He adjudges the judgment and decree of the clerk and the deed executed pursuant thereto void. From this judgment respondents County of Franklin and H. E. Stallings appealed.

*G. M. Beam for movant appellees.*

*John F. Matthews for H. E. Stallings and wife and Edward F. Yarborough and B. H. Cooke for Franklin County.*

RODMAN, J. If any of the four pillars on which the judgment rests suffice to support it, the judgment must be affirmed. This necessitates an examination of each of the reasons given.

Was the jurisdiction of the Superior Court to determine the liability of the land for taxes defeated by a finding that the owners—defendants in the action—had not listed the property for taxes?

The answer is no. The court was invested by statute with the power to determine the tax liability and to foreclose any tax lien G.S. 105-391. The owners of the property were before the court by the service of process. Whether the land was properly listed and the amount of taxes for which the land was liable were factual matters to be made the

subject of an issue upon proper traverse of the allegations of the complaint. An admission of liability of the land for the amount of the taxes asserted to be due, either by answer or by default, does not divest the court of jurisdiction if it subsequently develops that the admission was not correct. A judgment appropriately rendered on such an admission is conclusive. *Gaither Corp. v. Skinner,* 241 N.C. 532, 85 S.E. 2d 909; *Stelges v. Simmons,* 170 N.C. 42, 86 S.E. 801; *Turnage v. Joyner,* 145 N.C. 81.

Movants cite in support of the assertion that the court was without jurisdiction because of the failure to properly list the land for taxes. *Rexford v. Phillips,* 159 N.C. 213, 74 S.E. 337; *Stone v. Phillips,* 176 N.C. 457, 97 S.E. 375; *Phillips v. Kerr,* 198 N.C. 252, 151 S.E. 259; and *Wake County v. Faison,* 204 N.C. 55, 167 S.E. 391. The cases cited and relied upon are not authority for the position taken. The first three cases were under the old statute where the holder of a sheriff's certificate of sale could obtain a tax deed without invoking judicial process and without an opportunity to the owner to have the tax liability judicially determined. C.S. 8030. All then necessary was that the certificate holder should serve notice on the person in whose name the land was listed. A compliance with that statute was no notice to the true owner where the land was improperly listed. The philosophy of those cases is indicated by the following quotation from *Rexford v. Phillips, supra:* "The Legislature has never provided that a person without authority in law or in fact may enter on the lists an indefinitely described number of acres in a township containing many thousand acres, not in the name of the owner, but of someone else, and thereby confer authority to sell lands thus listed, and by the sheriff's deed pass the title to the lands of another person whose name does not appear in the list, and whose lands are not described therein, and who has never authorized the listing of his land by another, and whose land has not been listed by the chairman of the county commissioners, as required by law in case of the owner's default. . . . The provisions of the law are adequate for the proper listing of property and the collection of taxes, and *the Legislature did not intend that it should be confiscated without notice.*" (Emphasis added.) It was the taking without notice and an opportunity to be heard which formed the basis of decision in those cases.

As pointed out in *Travis v. Johnston,* 244 N.C. 713, *Wake County v. Faison, supra,* must be interpreted in the light of the facts of that case. When so viewed, it is no authority for the proposition that one served with process and a complaint in which it is alleged that the land he owns is liable for taxes and should be sold to satisfy the tax lien can ignore the court and years later say that the court was without authority to determine the question of tax liability. The presence of

the defendants, owners of the property, and the authority of the court to inquire as to the liability of the land for the taxes suffices to permit a valid adjudication of that question. The judgment is not void because of a mistake as to a fact which might have been put in issue.

Did the continuance of the sale from 13 October to 19 October render the sale void and deprive the court of the power to act on the bid then made?

The statutes in effect in October 1945 permitted the sale of real property under judicial decree on any day except Sunday, C.S. 690. Statutory authority was given by which the commissioner might "postpone the sale from day to day, but not for more than six days in all . . ." C.S. 692. The sale was not in fact continued from day to day. The continuance was for a period of six days. The assertion that the failure to postpone each day for the six-day period rendered the sale absolutely void and deprived the court of any power to act on the bid made cannot be sustained. The failure to follow the letter of the statute was, at most, an irregularity which could not affect the purchaser. The language of *Ruffin, J.* (later *C. J.*), in *Mordecai v. Speight,* 14 N.C. 428, is appropriate: "It would be dangerous to purchasers, and ruinous to defendants in execution, to require bidders to see that the sheriff had complied with all his duties. It is said, however, that this will allow sales to be made at other places besides the courthouse, as the same section fixes both the place and the day. The difference is this: a purchaser knows, and is bound to take notice, that the sheriff cannot sell but at the courthouse, and that a sale elsewhere must be void. But the sheriff may sell on Monday, or in certain cases, and under certain regulations; he may also sell the next day. Now, a bidder can no more know whether those provisions have been complied with than whether the sale has been duly advertised." *Williams v. Dunn,* 163 N.C. 206, 79 S.E. 512; *Wade v. Saunders,* 70 N.C. 270; *Brooks v. Ratcliff,* 33 N.C. 321.

An irregularity in conducting a judicial sale does not render the sale void. It is, of course, voidable. Confirmation by the court with knowledge of the irregularity and with jurisdiction of the subject matter and of the interested party ends the right to complain of the defect. The confirmation is an adjudication that what was done conforms to the directions of the court. *Upchurch v. Upchurch,* 173 N.C. 88, 91 S.E. 702; *Voorhees v. Jackson,* 10 Peters 449; Judicial Sales, 31 Am. Jur. 470; 50 C.J.S. 622; 1 A.L.R. 1446.

Was the judgment decreeing the foreclosure void because of the minority of three of the defendants? It is difficult to perceive how the minority of three of the defendants could serve as a shield for the adult defendants or excuse their neglect to defend. Each cotenant had a right to pay that part of the tax liability constituting a lien on his share of

the land, G.S. 105-411. A judgment rendered by a court against a person under disability who is not properly represented is an irregular judgment. When courts are informed of the disability of a party, they properly make provision for appropriate representation of the party under disability. When this action was instituted, there was nothing to show that any of the movants were under disability. Process regularly issued for and was served on each defendant. They were properly before the court. When the court acquired knowledge of the disability of some of the parties, it was proper for the court to appoint some competent and discreet person to act for those under disability. *Hoke, J.,* in *Houser v. Bonsal,* 149 N.C. 51, quotes from 14 Enc. Pl. & Pr. as follows: " 'Where the proceedings are conducted without the intervention of a next friend, or a guardian *ad litem,* in a case where one is required or where the appointment is irregular, the judgment is irregular and voidable. But, while a failure to appoint a next friend or guardian *ad litem* or to sue by one is irregular, it is only that. The defect is not a jurisdictional one, and hence the judgment is not void.' " *Cox v. Cox,* 221 N.C. 19, 18 S.E. 2d 713; *Syme v. Trice,* 96 N.C. 243; *Burgess v. Kirby,* 94 N.C. 575; *Fowler v. Poor,* 93 N.C. 466; *England v. Garner,* 90 N.C. 197; *Larkins v. Bullard,* 88 N.C. 35; *Turner v. Douglass,* 72 N.C. 127; *Marshall v. Fisher,* 46 N.C. 111; *Keaton v. Banks,* 32 N.C. 381; *Williamson v. Hartman,* 92 N.C. 236, 43 C.J.S. 279, 280; 37 Am. Jur. 842.

When the disability was called to the attention of the court, it acted promptly and appointed a guardian *ad litem.* The one appointed had been previously appointed guardian *ad litem* for others. Presumably he had already investigated the factual situation. There is no allegation or suggestion that the guardian *ad litem* did not in fact act in good faith. When he accepted the appointment, it was his duty not only to act in the utmost good faith, but to act diligently. For any failure to properly perform the duty he undertook, he became liable to those he represented for any loss that they might sustain. He was not, however, required to perform the impossible nor to manufacture a defense if none existed. If, as is now asserted, the lands were not in fact properly listed, the guardian *ad litem* should have made that defense. True, upon such a defense, the lands could have been properly listed, but only for a period of five years, and taxes assessed for that period instead of the period of some seventeen years for which the county sought collection. One who would seek relief from an irregular judgment must show that he has been prejudiced by the judgment and that he has acted diligently. *Collins v. Highway Commission,* 237 N.C. 277, 74 S.E. 2d 709; *Gough v. Bell,* 180 N.C. 268, 104 S.E. 535; *Carter v. Rountree,* 109 N.C. 29; *Harris v. Bennett,* 160 N.C. 339, 76 S.E. 217. Nearly seven years elapsed from the date of the decree of confirmation

before the minors moved to vacate the judgment. When did they reach their majority? What excuse do they now give for their delay? The record is silent. The Legislature has fixed the time within which a motion can be made to vacate decrees in tax foreclosure actions. G.S. 105-393. This statute would not apply to the minors so long as the disability existed. G.S. 1-17.

There is neither allegation nor suggestion of fraud on the part of Stallings, who purchased, or, forsooth, on the part of anyone.

Does the finding that the purchase price was unjust and inadequate render the sale void notwithstanding confirmation by the court?

In seeking an answer to the question it is proper to look to the decree of confirmation to see what, if anything, was said with respect to the price in 1945. The decree recites the sale on 19 October, that Stallings was the high bidder at $450, that the sale was duly reported to the court, that more than twenty days had elapsed from the sale, and that no upset bid "or objections have been filed or made by any person; and the Court further finding that the price of $450.00 is a just, fair and adequate price for the said lands, and that the same should be confirmed." Here then was an express finding by the court authorized to act that the price was just and adequate. The parties now complaining were then before the court. Some, as noted, were under no disability. As to them it would seem manifest that the decree of confirmation could not now be attacked because of any asserted inadequacy in price. To grant to one whose property is sold by decree of court the right, five years after the sale and confirmation, to attack the sale because of asserted inadequate price would destroy all respect for judicial sales. Decrees of confirmation entered by courts of competent jurisdiction are entitled to greater respect. With respect to the effect to be given a decree of confirmation, it is said in *Upchurch v. Upchurch, supra:* "The purchaser is then regarded as the equitable owner, and the sale, as it affects him or his interests, can only be set aside for 'mistake, fraud, or collusion' established on petitions regularly filed in the cause." *Duplin County v. Ezzell,* 223 N.C. 531, 27 S.E. 2d 448; *Land Bank v. Garman,* 220 N.C. 585, 18 S.E. 2d 182; *Sumner v. Sessoms,* 94 N.C. 371; Judicial Sales, 31 Am. Jur. 529; 50 C.J.S. 677, 678.

The findings of fact and conclusions drawn from the record are insufficient to support the judgment. Neither the judgment directing the sale, the sale made by the commissioner, nor the decree of confirmation is void. The judgment is

Reversed.

JOHNSON, J., not sitting.