## 1526

Vanessa Anderson SHAINWALD, Appellant v. Richard SHAINWALD, Respondent.

(395 S.E. (2d) 441)

Court of Appeals

*Randall M. Chastain*, Columbia, *for appellant.*

*Lee M. Robinson*, Charleston, *for respondent.*

Heard May 14, 1990.

Decided July 23, 1990.

*Per Curiam:*

This is a child custody case. The mother was awarded temporary custody of the parties' minor children. The mother appeals an order awarding the father permanent custody of the children. She claims the trial court erred in considering the written report of the guardian ad litem, in giving too much weight to the report, and in evaluating the overall weight of the evidence. We affirm.

The parties to this suit were married for more than eleven years. The father is 45 years old and the mother is 36. They have two children ages 10 and 6. The father is a college professor. The mother was at the time of the hearing employed part-time with a local insurance agency.

The primary issue is this case is whether the trial court misused the guardian ad litem's report and recommendation. The guardian testified at trial. Prior to her testimony, she inquired whether she would be required to submit a written report. The judge made the following observation: "I think it would work best that you give us your recommendation and we don't . . . and then you can follow it up with a written report and put it in this record. That will be acceptable to the Court."

Near the end of the guardian's testimony, the court responded to her question whether she should submit a written report: "Well do you need other than this what's she testified to, or do you need any further written report? We've got her testimony here we can get a transcript of it. Allright. Okay."[1]

Counsel for the father then stated: "Your Honor, I would just want to ask her for the record if she's not going to submit a written report how many witnesses approximately she talked to in coming to this recommendation?"

During her testimony the guardian ad litem testified the father had incurred some difficulty in exercising his visitation rights with his children. She concluded that if custody was placed with the father she thought he would see to it that the mother would have approximately equal access to the children regardless of the provisions of the court order. She summarized her conclusions as follows: "I think based on what I know so far, I think the children would be well placed with their father only because of the issue of access. I think he would guarantee access to the mother." In her report, the guardian ad litem found there had been considerable "difficulty arranging and effecting visitation between the children and their father because the mother has exercised undue control which has limited the children's opportunities for a positive relationship with their father." She also found if the mother obtained custody she may leave the Charleston area to reside in Spartanburg. This finding was apparently based on the observation the children and the mother spent a great deal of time in the Spartanburg area.

The father also testified he had difficulty exercising visitation rights and recited an incident where one child was in Spartanburg visiting the mother's parents when he arrived at the mother's home to pick up the child. He also testified the children were at the mother's paramour's lake house on occasion when he went to pick them up. The mother kept tally on the number of times the father had the children for visitation since the separation and, according to her records, he had them 49 percent of the time.

As we read the trial court's order, he awarded the husband custody of the children primarily for four reasons: (1) the

---

[1] This statement was apparently directed toward the attorneys.

mother had exposed the children to her adulterous relationship; (2) the father, as custodial parent, would be more disposed to encouraging a relationship with the mother than the mother would toward the father if she were custodian; (3) the father had a flexible work schedule; and (4) the father's interest in the education and religious training of the children.

## COURT'S RELIANCE ON THE GUARDIAN AD LITEM'S REPORT AND RECOMMENDATIONS

The mother interprets the court's direction to the guardian ad litem as a statement that there would be no written report. She contends the "report was inadequately based . . . internally unclear, and makes no real analysis of the situation." The mother also contends the order of the court in its dispositive parts is almost an exact copy of the written report and depends heavily upon that report. She also argues guardians ad litem should be precluded from making custody recommendations to courts.

There is a dearth of law in this state regarding the proper role of a guardian ad litem report in a custody case. In *Collins v. Collins*, 283 S.C. 526, 324 S.E. (2d) 82 (Ct. App. 1984), we implicitly approved the use of a guardian ad litem report to assist the judge in making a custody decision. We announced certain safeguards, however, by providing for the cross-examination of the guardian ad litem and any witnesses whose testimony formed the basis of the guardian's recommendation. In the recent case of *Richmond v. Tecklenberg*, Op. No. 1478 (S.C. Ct. of App. filed April 2, 1990) (Davis Adv. Sh. No. 9 at 14), *petition for rehearing granted on other grounds*, (Davis Adv. Sh. No. 11), this court held that a family court judge did not abuse his discretion in admitting the guardian ad litem's report.[2]

We recognize the concern of the mother that a family court may give undue weight to the recommendations contained in a guardian ad litem's report. However, we do not think such

---

[2] We view as enlightening the requirements of *S.C. Code Ann.* Section 20-7-122(5) (Cum. Supp. 1989) which provides that in a child abuse or neglect case the guardian ad litem will "provide the family court with a *written report . . . which includes . . . [the] recommendations for the case plan, the wishes of the child, if appropriate, and the subsequent disposition of the case.*" (Emphasis ours.)

concern should annul the long practice in this state of permitting guardians ad litem to make written reports to the court as long as the parties' rights to confrontation are protected. As stated in *Collins*, this may be accomplished by affording to the parties the right of cross-examination of the guardian ad litem and all other persons the guardian ad litem and all other persons the guardian ad litem may have talked to whose testimony formed the basis for his recommendations. *Collins*, 283 S.C. at 530, 324 S.E. (2d) at 85.

We reject the mother's somewhat novel argument that guardians ad litem should be precluded altogether from giving opinions regarding custody. We think much of the criticism of guardians ad litem stems from the failure of the bar to recognize the proper function of a guardian ad litem. A guardian ad litem is a representative of the court appointed to assist it in properly protecting the interests of an incompetent person. *Dawson v. Garcia*, 666 S.W. (2d) 254 (Tex. App. 1984); *Clarke v. Chicago Title & Trust Co.*, 393 Ill. 419, 66 N.E. (2d) 378 (1946); *In re Hallstead's Estate*, 338 Pa. 257, 12 A. (2d) 912 (1940); *see, Blackwell v. Vance Trucking Co.*, 139 F. Supp. 103 (D.C.S.C. 1956). A statement made by the court in *Bahr v. Golanski*, 80 Wis. (2d) 72, 83, 257 N.W. (2d) 869, 874 (1977), is instructive:

> The requirement that the children have independent legal representation does not in any way suggest that the parents or the trial court were unmindful of the children's welfare. Rather, it reflects the conviction that the children are best served by the presence of a vigorous advocate free to investigate, consult with them at length, marshal evidence, and to subpoena and cross-examine witnesses. The judge cannot play this role. **Properly understood, therefore, the guardian ad litem does not usurp the judge's function; he aids it.** (Emphasis added.)

We hold the extent to which a guardian ad litem is permitted to testify and give an opinion or recommendation in a child custody case is left to the sound discretion of the trial judge. However, judges should be mindful of the duty of the guardian ad litem to advocate and fully protect the interests of his ward. Any exercise of discretion by

the court which unreasonably interferes with the performance of that duty amounts to an abuse of discretion. Judges should also be mindful of the fact that a guardian ad litem is not in the true sense an adversary party and the court has a duty to insure that guardians ad litem perform their duties properly and in the best interest of their wards. The trial judge's duty to assure the child's best interests are protected requires as a minimum that (1) he select a competent person to serve as guardian ad litem; (2) he select a person with no adverse interests to the minor; and (3) the person so selected is adequately instructed on the proper performance of his duties.[3]

We agree with the mother that the record shows the ■ parties were left with the impression by the judge that it was not necessary for the guardian ad litem to furnish a written report after the hearing. Thus, it was error for the court to receive and utilize the report in making its custody determinations without first affording the parties an opportunity to see the report. Likewise, there was error in not affording them the right to examine the guardian ad litem and other witnesses who furnished facts contained in the report, unless we are able to say that such facts were either cumulative to the other evidence in the case or their admission otherwise amounted to harmless error.[4]

We have thoroughly examined the report of the ■ guardian ad litem and compared it to the court's order and conclude while some of the language contained in the order is similar to that contained in the report, we nevertheless think the court's use of the report was harmless error in view of the fact there is other testimony or evidence to support the findings of the trial judge.

The mother particularly complains about the court's use of the report on the subject of the lack of access to the children by the father if the mother should be awarded custody. She claims the court relied on the report of the guardian ad litem with regard to its findings on access. The court found there

---

[3] See Rule 17(d) SCRCP for other qualifications of a guardian ad litem.

[4] The holiday visitation schedule clearly parrots the schedule recommended by the guardian ad litem. Additionally, we find no independent evidence to support the visitation schedule. However, no one objects to the holiday visitation schedule.

had been continuing disputes between the parties on this matter and the mother had exercised "undue control" over the children. As noted above, both the father and the guardian ad litem testified on this subject. As to the other bases mentioned above for awarding custody to the father, we do not see that the guardian ad litem's report even touches upon them.

While this court is free to find facts based on its own view of the preponderance of the evidence, the trial judge who observed the witnesses was in a better position to judge their demeanor and veracity and should be given broad discretion. *McAlister v. Patterson*, 278 S.C. 481, 299 S.E. (2d) 322 (1982). A bare reading of the record does not convince us there was any gross denial of the father's access to the children by the mother. We defer to the trial judge, however, on this point because of his unique position to judge the credibility of the witnesses and resolve conflicts in their testimony. *Sauls v. Sauls*, 287 S.C. 297, 337 S.E. (2d) 893 (Ct. App. 1985).

## WEIGHT OF THE EVIDENCE

The mother next complains the family court erred in improperly evaluating the overall weight of the evidence, in choosing to punish the mother rather than evaluate her parental abilities fairly, and in giving too much weight to the purported protestations of religious faith on the part of the husband.

The best interest of the children is the controlling factor in all custody cases. This has been the law since at least 1853. *Ex Parte Schumpert*, 40 S.C.L. (6 Rich.) 344 (1853). The tender years doctrine is but one of a panoply of factors to be considered in awarding custody. *Jones v. Jones*, 290 S.C. 49, 348 S.E. (2d) 178 (Ct. App. 1986). The mother argues the evidence shows she was best able to care for the children, one of which was a girl of tender years. She cites as evidence of the husband's deficiencies in child rearing the fact the girl was returned to her with sand in her vaginal area. Concern was voiced by both the guardian and the court regarding the father's lack of concern for the children's hygiene. However, the court was convinced from the evidence that the situation had improved. We find support for that finding.

Both parties were shown to have had intimacy with third parties after their separation. Much was said during trial about the father having returned from Florida early with the children and found a man in the mother's bed. The mother claims the father set the situation up by returning early. She claims this was done for the sole purpose of disparaging her in the eyes of her children. Additionally, the court found as incredible the wife's testimony that she had not exposed the children to her adulterous relationship with her paramour. In this state, conduct which is "immoral" must also be shown to be detrimental to the welfare of a child before it is of legal significance in a custody dispute. *Langston v. Langston*, 250 S.C. 363, 157 S.E. (2d) 858 (1967); *Stroman v. Williams*, 291 S.C. 376, 353 S.E. (2d) 704 (Ct. App. 1987). We think the record supports the court's finding that the mother had exposed her adulterous relationship to the children.

As to the father's work schedule, the court found its flexibility best enabled him to accommodate the needs of the children. The record supports this finding. As to the father's religious beliefs, the record leaves much to be desired in terms of the sincerity of his religious commitment and especially the regularity of church attendance. However, the record is clear that the father is concerned with the religious and educational development of his children. Otherwise, both parents were shown to be fit parents who loved their children and had much to offer them.

Admittedly the evidence is close in this case and does not clearly preponderate in favor of either party. Further, if we had the benefit of being able to judge the credibility of witnesses, we may well have awarded custody to the wife. However, the record does not reflect that the evidence is so clearly in the mother's favor to warrant a finding of an abuse of discretion by the trial court.

Accordingly, the order of the trial court is

Affirmed.