**Todd Douglas FLEMING, individually and by his next friend Kenneth L. Fleming, Plaintiff–Appellant,**

**and**

**Kenneth L. Fleming, individually and on behalf of his son Todd Douglas Fleming, Plaintiff,**

v.

**Mary Ann ASBILL; John Earl Duncan, Defendants–Appellees,**

**and**

**South Carolina Department of Social Services; Mattie R. Hall; Brenton H. Hall; Brenton Lee Hall, a mature minor; Lexington County Department of Social Services, Defendants.**

No. 93–2238.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 27, 1994.

Decided Dec. 29, 1994.

---

**ARGUED:** Calvin Allison Rouse, North Augusta, SC, for appellant.  David Clifford Eckstrom, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, for appellee Asbill; Robert Charles Brown, Brown & Woods, Columbia, SC, for appellee Duncan.  **ON BRIEF:** Donna M. Seegars, Brown & Woods, Columbia, SC, for appellee Duncan.

Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge HALL wrote the opinion, in which Judge MURNAGHAN and Judge NIEMEYER joined.

## OPINION

K.K. HALL, Circuit Judge:

Todd Fleming, through his next friend, his father Kenneth Fleming, appeals an order of the district court dismissing his complaint against his former guardian ad litem and an attorney for his maternal grandparents in a prior child custody battle.

### I.

Because the appealed orders are Fed. R.Civ.P. 12 dismissals, our recitation of facts will assume as true the allegations of the complaint.

Todd Fleming ("Todd") was born July 20, 1979.  His mother died when he was eight months old.  Todd lived with his father, Kenneth Fleming ("Fleming") from his mother's death until the events that triggered this lawsuit.

In 1986, Todd's grandparents, Brenton and Mattie Hall, filed a petition seeking custody in Lexington County, South Carolina, Family Court.  The Halls were represented by attorney John Earl Duncan.  Under state rules of procedure, the court appointed Mary Ann Asbill, an attorney, as guardian ad litem for Todd.[1] She served in that capacity from July, 1986, until December 7, 1989.

Fleming appeared at a family court hearing on October 30, 1986, at which an oral order was made reaffirming his right to custody.  Soon thereafter, he took his son to Nevada, where he had found a job.  In just a

---

1.  *See* S.C. R. Civ. P. 17(c), (d); *West v. West,* 208 S.C. 1, 36 S.E.2d 856, 857 (1946) (infant that is subject of a custody proceeding should be represented by a guardian ad litem).

few months, though, he was able to find work in Augusta, Georgia, and he moved back east.

Meanwhile, the Halls, represented by Duncan, had obtained an *ex parte* order awarding them custody of Todd. Asbill participated in the proceeding. Fleming had no knowledge of this proceeding or order, although Duncan, Asbill, and the Halls knew where he and Todd were.

On February 29, 1988, Asbill filed an *ex parte* affidavit in the family court, requesting a "pick-up" order that would allow authorities to seize Todd and deliver him to the Halls. The order was issued. No notice was provided to Fleming, though again Asbill knew where he was (else no "pick-up" would have been possible).

The "pick-up" occurred immediately. A South Carolina law enforcement agent went to Westmont Elementary School in Martinez, Georgia, seized eight-year-old Todd, and took him to the Halls in South Carolina. The seizure occurred without so much as a phone call to Fleming.

Todd quickly became distraught. After two days of pleading, he prevailed upon the Halls to take him back to his father, which they did on March 2, 1988.

Fleming's victory in this first skirmish was short-lived. On April 11, 1988, the Halls personally went to Todd's elementary school and absconded with him, without notice to Fleming or even to school authorities. After a frantic search for his missing son, Fleming discovered what had happened. Todd would remain in the custody of the Halls for two and one-half years. During one span of eight months, Fleming was permitted no contact with his son at all.

On June 6, 1988, based on what Fleming asserts were Duncan and Asbill's knowingly contrived allegations of his instability and misconduct, the court awarded the Halls permanent custody. Fleming appealed, and the case was remanded for reconsideration.

Fleming's case on remand was strengthened by evidence of Todd's sufferings while in the Halls' care. A cousin who lived nearby, Brenton Lee Hall, abused Todd physically and sexually. Though Fleming, Todd, and Fleming's sister Janice Arnold made, between them, no fewer than eight visits and fifteen telephone calls to the Lexington County Department of Social Services to report this abuse, no investigation resulted. Fleming alleges that Asbill intervened at the Department to head off any inquiry.

In August, 1990, the Halls agreed to return Todd to Fleming, and his custody was restored by stipulation. By this time, Fleming had spent over $10,000 on legal fees. He had lost his house, his land, a car, a job, and his life savings. During the battle, he was publicly accused of kidnapping and child abuse, and was threatened with criminal prosecution.

On May 14, 1992, Fleming, for himself and as next friend of Todd, filed this suit in district court against Asbill, Duncan, the Department of Social Services, the Halls, and Brenton Lee Hall. The claims against Asbill and Duncan are the only ones relevant here. He alleged claims against them for gross negligence, professional malpractice, and deprivation of civil rights under 42 U.S.C. § 1983. In addition, Asbill was charged with breaching her fiduciary duty to her ward. In support of these claims, Fleming asserted that Duncan and Asbill conspired with the Halls and intentionally misrepresented facts to the family court.

Duncan and Asbill moved to dismiss. In separate orders, the district court granted the motions. It held that Asbill was entitled to quasi-judicial immunity as to all claims, and that Duncan, as the Halls' attorney, owed no duty to Fleming or his son. Moreover, the court ruled that Duncan was not a state actor amenable to suit under § 1983. The claims against the other defendants were dismissed in separate orders.[2]

Todd appeals.[3]

---

**2.** The Department of Social Services was dismissed for lack of subject-matter jurisdiction, and the Halls were dismissed by stipulation.

**3.** The notice of appeal in this case is somewhat ambiguous. It bears the style of the case below, which labels Kenneth Fleming as a plaintiff in his own right. The text of the notice, though, identifies only Todd as an appellant:

## II.

### A.

■ We begin with the claims against guardian ad litem Asbill. The district court held that Asbill was entitled to quasi-judicial immunity on all claims. A line of Supreme Court cases holds that judges, prosecutors, witnesses, and other actors in the judicial process are immune from § 1983 or *Bivens* liability for misfeasance of their duties. *See Briscoe v. LaHue*, 460 U.S. 325, 345–46, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96 (1983) (witnesses); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (administrative law judges); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (state judge); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecuting attorney).

There are sound policy reasons to afford immunity to guardians ad litem in custody cases:

> A guardian ad litem must ... be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings.

*Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984). *Cf. Gardner v. Parson*, 874 F.2d 131, 145 (3rd ·Cir.1989) (*Kurzawa*'s absolute immunity is too sweeping an interpretation of *Briscoe*; immunity should be available only while the guardian is playing a judicial role).

We need not decide whether *Kurzawa* or *Gardner* states the better test, because Asbill is immune from Todd's § 1983 claim under either. All of the actions complained of occurred within the judicial process; in short, Asbill lied about X to procure order Y. Even if Asbill lied to the judge in open court, she was still acting as the guardian, and is immune from § 1983 liability.[4]

### B.

■ Todd's common-law claims against Asbill present more difficulty. The district court cited a South Carolina case that says, "A guardian ad litem is a representative of the court appointed to assist it in protecting the interests of an incompetent person." *Shainwald v. Shainwald*, 302 S.C. 453, 395 S.E.2d 441 (Ct.App.1990). The court then simply applied the same *Briscoe* analysis and reached the same conclusion.

South Carolina common law is to the contrary. A long string of cases makes it clear that a guardian ad litem is liable to his ward for negligent performance of his duties.

> "If in consequence of the culpable omission or neglect of the guardian ad litem the interests of the infant are sacrificed, the guardian may be punished for his neglect as well as made to respond to the infant for the damage sustained."

*Simpson v. Doggett*, 159 S.C. 294, 156 S.E. 771, 773 (1930) (quoting 31 Corpus Juris 1141); *McIver v. Thompson*, 117 S.C. 175, 108 S.E. 411, 416 (1921); *Cagle v. Schaefer*, 115 S.C. 35, 104 S.E. 321, 322 (1920). These three cases have continued to be cited with approval over the years. *E.g, Cumbie v. Cumbie*, 245 S.C. 107, 139 S.E.2d 477, 480 (1964) (criticizing guardian ad litem's performance and reminding him of his "duties, liabilities and responsibilities"); *Clarendon Holding Co. v. Witherspoon*, 258 S.C. 296, 188 S.E.2d 480, 483 (1972) (quoting *Simpson*

Notice is hereby given that Todd Douglas Fleming, by his Next Friend Kenneth Fleming, Plaintiffs above named, hereby appeals to the United States Court of Appeals for the Fourth Circuit, [the orders dismissing claims against Asbill and Duncan].

This notice was filed September 14, 1993, before the recent amendment to Fed. R.App. P. 3(c) went into effect. Specificity in naming the parties noting the appeal is a prerequisite to our jurisdiction, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and, even under the recent amendment, an unnamed party's intent to appeal must be

clear from the notice itself. Kenneth Fleming's intent to appeal is hardly clear from the notice, and, at argument, Todd's attorney disclaimed any intent to represent Kenneth individually. Thus, though Asbill and Duncan wasted effort in their brief defending against Kenneth's claims, those claims are not before us.

4. We do not exaggerate. *Briscoe* itself involved a police officer's perjury, and the Supreme Court declared the officer immune from § 1983 liability.

at length and describing the guardian/ward relationship as "fiduciary").[5]

Asbill says that none of these cases involved a custody dispute, and that is true enough, but there is no indication in any of them that the rule is subject to exceptions. In fact, in 1988, when the South Carolina legislature created a system of lay guardians ad litem to serve without compensation in child abuse and neglect cases, it granted the volunteers immunity only for simple negligence:

> After participating in the training program of the Guardian ad Litem Program, any person who is appointed to serve as guardian ad litem and serves without compensation is not liable for any civil damages for any personal injury as a result of any act or omission by the person in the discharge of the responsibilities of a guardian ad litem if he acts in good faith and is not guilty of gross negligence.

S.C.Code Ann. § 20–7–127. Fleming argues that if a lay volunteer can be liable for gross negligence, then surely a paid professional like Asbill ought to be. This argument is logical and persuasive. If guardians ad litem were already afforded absolute quasi-judicial immunity in South Carolina, the limitation of liability in § 20–7–127 would have been a vain act.[6]

■ We conclude, then, that South Carolina yet adheres to the *Simpson–McIver–Cagle* line of cases, and a paid guardian ad litem must answer to his ward if his negligent acts cause the ward damage. We therefore reverse the dismissal of Todd's common-law claims against Asbill.

### III.

#### A.

■ The Flemings' scattershot common-law claims against Duncan basically amount to a claim of malicious prosecution.[7] Though South Carolina recognizes this tort where the prior "prosecution" was a civil suit, the proper defendant is the party that brought the prior suit, i.e. the Halls. The lawyer for that party is ordinarily not liable. *Gaar v. North Myrtle Beach Realty Co.*, 287 S.C. 525, 339 S.E.2d 887, 889–90 (Ct.App.1986). So long as an attorney acts in his client's interests, and not for personal or malicious reasons, he is immune from suit to an opposing party.

There is nothing in the complaint from which one could conclude that Duncan did anything with a personal or malicious motive to cause harm to Todd. He may well have zealously pursued the malicious aims of the Halls, but that is not enough to satisfy *Gaar.*

#### B.

■ Duncan is also plainly not liable under § 1983. Private lawyers do not act "under color of state law" merely by making use of the state's court system. *See Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).

### IV.

We are mindful that today we have applied a rule of state law that is contrary to the trend in other jurisdictions and of debatable wisdom, especially in the charged circumstances of a child custody battle. On the other hand, it is our duty in a diversity case to apply state law as we find it. South Carolina case law, hoary though most of it is, plainly and unequivocally states that a guardian ad litem is liable for damages he negligently causes his ward. Only six years ago, South Carolina's legislature passed a statute

---

5. Other states have followed a similar rule. *E.g., Speck v. Speck*, 42 Ga.App. 517, 156 S.E. 706 (1931); *Franklin County v. Jones*, 245 N.C. 272, 95 S.E.2d 863 (1957). *See also* 42 Am.Jur.2d Infants § 179 (1969 & Supp.1994) (same).

In the wake of *Briscoe*, though, several states have adopted its rationale and afforded guardians ad litem quasi-judicial immunity, usually under a functional test like that adopted by the Third Circuit in *Gardner. See* cases collected at 14 A.L.R.5th 929 (1993).

6. Asbill does not argue that the legislature intended to impose new, rather than limit the existing, common-law liability of a guardian ad litem.

7. Todd also argues that he was somehow in "privity" with the Halls so as to make him Duncan's "client," and in turn subjecting Duncan to liability for professional negligence. We see no merit in this argument.

that implicitly recognizes the vitality of this longstanding rule.

The dismissal of Todd's common-law claims against Asbill is reversed, and the case is remanded for further proceedings. In all other respects, the judgments of the district court are affirmed.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*