[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The dispositive issue to be decided in this case is whether Charles Tupper, a minor, who will be ten years old this September 22nd, will continue to attend Eagle Hill-Southport, or be enrolled in the fifth grade at Farmingville School in Ridgefield. Eagle Hill is a private school for students diagnosed with more than one learning disability, and has a total enrollment of eighty-six students for this upcoming school year. Farmingville School is a public elementary school expecting to enroll 400 students. Eagle Hill is restricted to teaching students with dual learning disabilities and enjoys an excellent reputation. Farmingville also has a reputation for educational excellence in both the mainstream and special education program which is divided in two parts: (1) the Alternative Learning Center; and (2) the Learning Center. The Alternative Center expects to enroll about a dozen students diagnosed with severe multiple disabilities be they emotional, psychological, behavioral or mental retardation. The Learning Center expects to enroll twenty-eight students this year, including Charles Tupper, all with one learning disability. Charles Tupper was diagnosed having dyslexia, a reading disorder, by the Farmingville psychologist when he was in the first grade. He attended the Learning Center for about two hours each day for the next two and one-half years, and his special education teacher was Ms. Diane Mullen. Charles would spend the remainder of the school day in the regular mainstream class. He was very cooperative with Ms. Mullen and was CT Page 11810 not resentful for having been placed in the Learning Center. He received one hour each day of one-on-one instruction with her learning how to read, and the other hour he would practice reading with other instructors under her supervision. Charles would be in a class of three or four other students during this second hour, all of whom were above average intelligence. His grades in the regular classes were A's and B's in math and science and also received above average grades in other subjects. He participated in soccer and cross-country and enjoyed playing other sports at Farmingville. He made friends easily and was generally well liked by the other students and his teachers.
In January of 1996, the defendant (father) was not satisfied with the progress his son was making at the Learning Center and brought him to be tested by Dr. Leonard Rappaport at Children's Hospital in Boston. He found the child dyslexic and prepared a comprehensive report for the father dated March 27, 1996, and advised him the child would be at risk unless an appropriate remedial program was provided for him. About this time, the father retained Dr. Robert S. Kruger, a clinical psychologist, to confirm Dr. Rappaport's test results and to evaluate the child's present reading skills. (Defendant's Exhibit E.) The plaintiff (mother) was dissatisfied with Dr. Kruger's recommendation that Charles be placed at Eagle Hill-Southport, in a full-time special education program. The mother retained Dr. Dean T. Hokanson, Ph.D., and Ms. Ann Terezakis, M.S., to evaluate her son. In their joint report dated July 30, 1997, they concluded the child should remain in the special education program at Farmingville School. (Plaintiff's Exhibit 3.) In a prejudgment memorandum dated December 26, 1997, after hearing testimony from these three experts, Judge Mihalakos found it would be in the child's best interest to be enrolled at Eagle Hill-Southport, commencing in January, 1998. Charles has been attending there for the past year and one half to June, 1999.
The parties have gone through a lengthy and bitter divorce during these past three years, and on May 6, 1999, a judgment of dissolution was entered at Middletown Regional Court (Foley, J.). This judgment provided for Dr. Robert S. Kruger, Dr. Dean T. Hokanson, and Ms. Ann Terezakis to confer with each other and agree on an appropriate school the child should attend this upcoming school year. If they could not agree on such a school by June 15, 1999, the judgment required that this issue be decided by this court after a hearing. The three experts considered a number of private schools but could not agree. The judgment also provided that the court consider Eagle Hill-Southport, or CT Page 11811 Farmingville School as alternatives.
The hearing on this issue was held by this court over three days, August 17, 18 and 19. At this time, both parties, their respective three experts, Dr. Mendelson, the director of special education in Ridgefield, and Ms. Diane Mullen, a special education teacher at Farmingville, all testified. The defendant (father) also called Scott Clark, a police officer in Ridgefield.
The plaintiff (mother) believes as do her two experts, Dr. Hokanson and Ms. Terezakis, that Charles best interests would be served for Charles to enter the fifth grade at Farmingville. This conclusion was shared by Dr. Mendelson and Ms. Diane Mullen.
The defendant (father) believes as does his expert, Dr. Kruger, that Charles should continue in the fifth grade at Eagle Hill, the best alternative now available for him. The court has also reviewed the evaluations made by these experts after Charles completed the past year and one-half at Eagle Hill in June, 1999.
1. Plaintiff's Exhibits 4 — Evaluation by Dr. Hokanson and Ms. Tereza.kis April 17, 1999.
2. Plaintiff's Exhibit 6 — Recommendation of I.E.P. Team at Farmingville School which included Dr. Hokanson and Dr. Mendelson, dated June 24, 1999.
3. Defendant's Exhibit E — Evaluation by Dr. Kruger dated April 25, 1999.
4. Defendant's Exhibit A B — Progress Report from Eagle Hill-Southport, June 11, 1998 to Mrs. Tupper, and June 11, 1999 to Mr. Tupper.
The four experts all agree that Charles has made progress improving his reading skills during the past year and one-half at Eagle Hill. Dr. Kruger believes he has made significant progress by raising his grade level by one year. While at Farmingville, he was in the third grade reading on a first grade level, and now he has gone through the fourth grade and is reading at a second grade level. He also believes that Eagle Hill is the ideal school to provide the services he needs.
Dr. Hokanson, Ms. Terezakis, and Dr. Mendelson believe his progress has been moderate and his pace of growth in reading and writing skills were the same at Farmingville as Eagle Hill. They CT Page 11812 all conclude that the child would progress more educationally and emotionally in a mainstream school like Farmingville where he would learn more from the other bright and creative students there. In her testimony, Ms. Diane Mullen shared their position that Farmingville would be the best school for Charles.
The court's authority to decide this issue is found in §46b-56(a) which states that the court may at any time make or modify any proper order regarding the education of children. This court also has the equitable authority to consider the child's preference because he has an interest in these proceedings. Furthermore, the judgment of May 6, 1999, clearly gives this court the authority to decide the issue if the experts could not agree on an appropriate placement for the child.
It is well settled in this state that in deciding this issue the court must always be guided by what is in the best interests of the child. Schult v. Schult, 241 Conn. 767, 777 (1997); Knockv. Knock, 224 Conn. 776, 789.
One of the important questions to decide is at which school — Eagle Hill or Farmingville — will the child progress more rapidly.
From the testimony of the plaintiff's (mother's) experts, Dr. Hokanson and Ms. Terezakis, and considering their joint evaluation of April 17, 1999, and the testimony of Dr. Mendelson, and considering the I.E.P. placement report of June 24, 1999, and the testimony of Ms. Diane Mullen, the court finds the following conclusions of fact.
1. The child has made moderate progress during the past year and one-half at Eagle Hill. The court believes he will progress more by going to Farmingville this year. Eagle Hill has only eighty-six students attending this coming year, all with multiple disabilities taught in a restrictive environment. Farmingville is a mainstream school with 400 students in an upscale open environment.
2. The special education program at Farmingville will be able to meet all his needs according to Dr. Mendelson, Dr. Hokanson and Ms. Terezakis. He again will be assigned to Ms. Diane Mullen, his favorite teacher at the Learning Center at Farmingville, for two hours each day, with one hour of one-on-one instruction, in small classes of three or four students with generally the same disability. The other hour, he will receive additional CT Page 11813 instruction in reading with another instructor under Ms. Mullen's supervision.
3. Dr. Mendelson, who did not testify at the hearing before Judge Mihalakos, was a credible and persuasive witness. He is the director of special education in Ridgefield with over twenty-six years of experience in this field. He knows and has worked with all three experts in the past in pupil placement. He confirmed the testimony that Charles has one learning disability known as dyslexia, a reading and writing handicap. He knows and has worked with the other three experts who represented the parties in this case and finds them all competent and honest clinicians. He has this year and in the past recommended the placement of students at Eagle Hill — all who had multiple and severe disabilities. Charles should be enrolled in Farmingville where he will spend the majority of the day with bright, creative, and intelligent students comparable to his own intelligence and abilities, and will learn more by interacting with them than the students at Eagle Hill. He will thrive and grow by being in the mainstream classes in art, music, math, science, social studies and computer science. Both Dr. Mendelson's and Ms. Mullen's only interest was for Charles to receive all the services he needs at Farmingville. They were not retained and paid as were the experts of the respective parties. They were both impartial and responsive witnesses. The court found their testimony to be clear and convincing that the child should be enrolled in the fifth grade this September at Farmingville School rather than continue at Eagle Hill. Dr. Mendelson's testimony was especially credible, logical and persuasive. The court adopts the conclusion in the I.E.P. team report, dated June 24, 1999, signed by Dr. Mendelson and Dr. Hokanson, and supported by Ms. Diane Mullen, that Farmingville School is an appropriate placement for Charles for the upcoming school year.
4. Ms. Diane Mullen added credibility to the three other of the plaintiff's experts. She believes Charles likes being in her class, and she is looking forward to teaching him again this year. Her answers were responsive and she impressed the court as being an intelligent and dedicated teacher. There are also computers in the Learning Center and in the regular classes at Farmingville, and Charles has learned how to use them. All her students have above average intelligence as does Charles. Those with multiple disabilities, including those diagnosed as mentally retarded, are assigned to the Alternative Center. He was happy while at Farmingville and cooperated with her. He never expressed any resentment of being in her special education class for two CT Page 11814 hours a day and did not affect his self-esteem. Her willingness and confidence that she can improve his reading skills was impressive.
5. The court finds that Charles has the intelligence and the maturity to express his preference as to which school he should be attending. The child's preference is clearly to return to Farmingville. He expressed this preference to his mother, as well as to all the experts. He enjoyed having been able to participate in more sports at Farmingville. His best friends are at Farmingville. All the testimony described him as having superior intelligence, with the ability to interact with older adults and teachers, and a maturity beyond his years. The court can understand why he does not enjoy traveling by bus to Eagle Hill-Southport, approximately 40 miles a day, having to get up at 6:00 a.m. and returning home tired at about 4:30 p. m., when he lives about two miles from Farmingville School.
6. The court rejects the testimony of Dr. Kruger that Charles may have a second disability known as Attention Deficit Disorder (ADD). He examined the child on August 9th, about a week before this hearing and was brought to his office by his father without advising his mother. Dr. Kruger never mentioned this disability in any of his prior evaluations nor did any of the other experts.
For all the foregoing reasons, the court finds it in the child's best interest that he be enrolled at Farmingville School in Ridgefield for the upcoming year.
Romeo G. Petroni, Judge Trial Referee