[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties who are the unmarried parents of the minor child, Jordan Sharp, disagree over their respective rights to custody and visitation. After a fully contested hearing, the court finds the following facts.
The plaintiff is the father and the defendant is the mother of the minor child, Jordan Sharp, born March 30, 1999. The parties had a brief sexual relationship between June and October 1998 that resulted in Jordan's birth. Following his birth, the parties shared responsibility for Jordan's care. The plaintiff, who worked evenings at the time, cared for Jordan during the day and on his days off while the defendant, who worked during the day, cared for him at night and on weekends. The parties' shared custody plan continued from Jordan's birth until July 10, 2000.
On July 10, 2000, the plaintiff sought and obtained an ex parte custody order from the court, Jones, J., granting him sole temporary custody of Jordan. The basis for the order was the plaintiff's claim that the defendant had physically abused the child. The defendant vigorously disputes the plaintiff's claim. Pursuant to court order, the defendant was limited to supervised visitation with Jordan until December 2000 when visitation became unsupervised.
The plaintiff seeks sole custody of the minor child with the defendant retaining a right to unsupervised visitation. The child's guardian ad litem, Shelby Buckman, also recommends that the plaintiff be awarded sole custody of Jordan. The plaintiff and the guardian ad litem assert that the defendant has difficulty controlling her anger and her inability to appropriately manage her emotions has adversely affected Jordan. The plaintiff and the guardian ad litem also claim that an award of sole CT Page 7489 custody is necessary because the defendant's anger and temper have made joint decision-making impossible. The defendant requests that the parties be awarded joint legal custody, the child's primary residence to be with the defendant. She denies that she has an anger management problem or that Jordan has been abused in any way.
Matters of custody and visitation are to be determined based on the best interests of the child. General Statutes § 46b-56(b). "It is well settled in this state that, in deciding custody or visitation issues, a court must always be guided by what is in the best interests of the child." Ireland v. Ireland, 246 Conn. 413, 419 (1998). See alsoSchult v. Schult, 241 Conn. 767, 777 (1997); Hall v. Hall, 186 Conn. 118,121 (1982) and Stewart v. Stewart, 177 Conn. 491, 408 (1979). "Among the various factors the court may consider when determining the best interest of the child are the parties' parenting skills; the child's emotional ties to each parent; the psychological instability of the parent and whether the child is in a stable and loving environment. The court may also take into account the recommendations of the child's therapist; and the child's guardian ad litem." (Citations omitted.) Janik v. Janik,61 Conn. App. 175, 181, cert. denied, 255 Conn. 940 (2001).
I find that the defendant does indeed have difficulty controlling her anger which interferes with her ability to appropriately care for Jordan. On June 14, 2000, the defendant was attending with Jordan a marriage seminar at her church. Jordan was crying and disrupting the seminar. After unsuccessfully trying to calm Jordan, the defendant let her anger spin out of control. She yelled at Jordan, who was only 14 months old at the time, shook him and inappropriately struck him three times on his thigh with an open hand. The defendant proceeded to take him outside of the church and spanked him again in the parking lot. The defendant was visibly agitated and angry during this time.
A prior incident in which the defendant allowed her uncontrolled anger to result in inappropriate discipline occurred in May 2000. The defendant's child Aliana Williams[1], who was three years old at the time, disobeyed the defendant while at the home of Annabel Clark, the child's daycare provider. The defendant took Aliana into a bedroom and closed the door. Moments later, the defendant exited the bedroom with Aliana. Aliana's face was bruised and her nose was bleeding after having been struck by the defendant. The defendant also stated "That's why I don't like to hit her because I don't stop until I see blood."
The defendant's relationship with the guardian ad litem during this litigation provides a further example of the defendant's inability to properly restrain her emotions. During a visit by the guardian ad litem at the defendant's home, the defendant became belligerent and verbally CT Page 7490 abusive toward Buckman. The defendant did so without cause and in the presence of the minor child. During subsequent contacts with the guardian ad litem, the defendant expressed anger and inappropriately lost her temper. The defendant was unable to control her emotions and work with the guardian ad litem as Buckman sought to fulfill her role representing Jordan's best interests.
During the course of these proceedings, the defendant did attend anger management sessions at the Family Clinic at Southern Connecticut State University. The defendant however denies that the above incidents occurred and continues to deny that she has an anger management problem. She possesses no insight into her inappropriate behavior and, as a result, she can be expected to exhibit further episodes of unrestrained anger and loss of temper which will adversely affect her ability to care for Jordan and additional instances of improper discipline of her children.
The defendant also exercised poor judgment in conflict with Jordan's best interests when she abruptly terminated his long term daycare provider. On June 29, 2000, after learning that Annabel Clark had told the plaintiff about the incident at church, the defendant immediately ceased bringing Jordan to Clark's home. She told the plaintiff that she did so because Clark "talks too much," apparently in reference to Clark's reporting the recent event at church. Jordan had been receiving daycare from Clark since shortly after his birth. In making the decision to abruptly discontinue his daycare, the defendant did not have Jordan's best interests in mind. She failed to comprehend the substantial adverse impact that such an abrupt decision would have on her infant son.
Mary DePaola, a family services counselor with the Family Services Unit of the Superior Court, conducted an evaluation of the family pursuant to an order of the court. Based on her investigation, she recommended that the parties be awarded joint legal custody, the child's primary residence to be with the plaintiff. DePaola determined that the plaintiff will provide more consistent and stable care for Jordan. The evidence submitted to the court supports this determination.
The plaintiff has provided a stable and loving environment to Jordan since the child's birth. For the first fifteen months of Jordan's young life, the plaintiff shared custody of Jordan with the defendant. He had Jordan in his care every day the defendant worked and on his days off. Since July 10, 2000, when the temporary custody order was issued, the plaintiff has been Jordan's primary care giver. He has provided consistent, attentive and appropriate care. His decisions concerning Jordan appear to be governed by the child's best interests. It is in Jordan's best interests that primary physical custody be awarded to the CT Page 7491 defendant.
It is also in Jordan's best interests that the parties are awarded joint legal custody. The plaintiff and the guardian ad litem assert that sole custody with the plaintiff is necessary due to the degree of conflict that exists between the parties. The relationship between the parties has indeed been contentious. However, the defendant has been an important care-giver to Jordan for much of his life and she cares deeply about him. It is in his best interests that she continues to be involved in important decisions affecting his life. The concern over conflict can be adequately addressed by providing the plaintiff with final decision making authority.
In light of the above, the court enters the following orders:
1. The plaintiff and the defendant are awarded joint legal custody of the minor child, primary physical custody shall be with the plaintiff. The plaintiff shall inform the defendant of major issues involving the child's health, safety, welfare and education and consult with her in a good faith effort to reach a mutually agreeable decision regarding any such issue. If the parties cannot reach agreement after consultation, the plaintiff shall the authority to make the final decision.
2. The defendant shall have the right of reasonable visitation including but not limited to the following:
A. Alternating weekends from Friday at 4:30 p.m. until Sunday at 6:00 p.m. and one weekday from 4:30 p.m. until 7:00 p.m. The day of the week is to be agreed upon by the parties. Transportation shall be shared equally by the parties.
B. During the summer, each party shall be entitled to two non-consecutive weeks of vacation time with the minor child, provided the party is not working during the vacation time. The party seeking the vacation time shall notify the other party at least 30 days in advance of the dates of the proposed vacation time. All vacation time must be agreed upon in advance by the parties. If either party intends to travel out of state with the child, that party shall notify the other party of the address and telephone number where they will be staying and allow daily telephone contact with the minor child.
C. The parties shall alternate the following holidays each year: New Year's Day, Martin Luther King Day, Easter, Memorial Day, July 4th, Labor Day, Columbus Day, Veterans Day, Thanksgiving, Christmas Eve, and Christmas. CT Page 7492
D. Each of the parties shall have the right to visit with the child for at least two hours on the child's birthday when the birthday does not fall on a day when that party would otherwise have custody or visitation.
BY THE COURT
Judge Jon M. Alander