CHERYL SCHULT *v.* JEFFREY SCOT SCHULT
(SC 15418)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 15—officially released July 22, 1997

*Elizabeth Gleason,* with whom, on the brief, were *Mary Ann Barile* and *Lucy W. Rankin,* for the appellant (guardian ad litem of minor child).

*Yvonne M. Shoff,* certified legal intern, with whom was *Carolyn Wilkes Kaas,* for the appellee (plaintiff).

*Linda P. Dunphy,* with whom, on the brief, was *John C. Kucej,* for the appellee (defendant).

*John J. Bennett,* for the appellee (intervenor Joan Radin).

*Colette S. Griffin,* with whom, on the brief, was *Robert P. Murphy,* legal intern, for the appellee (minor child).

*Louis I. Parley, Gary Cohen, Gaetano Ferro* and *Arnold Rutkin* filed a brief for the American Academy of Matrimonial Lawyers, Connecticut Chapter, as amicus curiae.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether an attorney representing a minor child in connection with a custody dispute may advocate a position that is contrary to that of the child's guardian ad litem. The plaintiff, Cheryl Schult, brought this dissolution of marriage action against the defendant, Jeffrey Scot Schult, seeking, inter alia, custody of their only child. The child's maternal grandmother, Joan Radin, intervened in the dissolution action pursuant to General Statutes § 46b-57.[1] The trial court appointed both an attorney and a guardian ad litem for the child. The

[1] General Statutes § 46b-57 provides: "Third party intervention re custody of minor children. Preference of child. In any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of chapter 815o, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference."

guardian ad litem appeals from the judgment of the Appellate Court, which affirmed the judgment of the trial court granting sole custody to the intervenor and visitation rights to the plaintiff and the defendant. See *Schult* v. *Schult*, 40 Conn. App. 675, 681–82, 672 A.2d 959 (1996). We conclude that the trial court did not abuse its discretion in determining that it was in the best interests of the child to permit the child's attorney to advocate a position regarding custody that was contrary to the position of the guardian ad litem. Accordingly, we affirm the judgment of the Appellate Court.

The following factual and procedural history is undisputed. The plaintiff and the defendant were married on February 14, 1986. Their only child was born approximately two and one-half years later, and has a history of emotional, psychological and developmental problems. On March 7, 1991, the plaintiff brought the present dissolution action against the defendant seeking, inter alia, custody of their child. The defendant filed a cross complaint in which he, too, sought custody of the child.

On April 18, 1991, the defendant moved out of the family home. On that same date, Steve Norman moved into the family home as a boarder. The plaintiff and Norman have resided together since that time and now have plans to marry. On August 16, 1991, upon motion by the defendant, the trial court, *Jones, J.,* appointed Colette Griffin as the child's attorney.

The following additional facts are set forth in the Appellate Court opinion. "On the evening of November 19, 1991, Norman was baby-sitting while the plaintiff, a licensed nurse practitioner, was at work. The child was three years old at the time. Norman testified that about five minutes after the child had gone to bed, he came out of the bedroom and was crying. Norman observed that the child had a mark above his eye and treated the injury with an ice pack. After fifteen to

twenty minutes, the child stopped crying and went back to bed. The following morning, Norman noticed that the child was limping and would not put any pressure on his leg. When the plaintiff returned home at 7:30 a.m., Norman told her that 'we've got a problem.'

"The plaintiff called Karen Laugel, their pediatrician, who was in her office in Bridgeport. The plaintiff and Norman took the child in the plaintiff's car to Laugel's office. After examining the child, Laugel stated that 'it looks like a broken leg.' Feeling that the child's injury was 'very worrisome for the possibility of abuse' and that the child's injury could not 'be explained by falling out of the bed,' Laugel instructed the plaintiff and Norman to bring the child to Bridgeport Hospital where the child could be treated for his injury and where an investigation would be initiated for child abuse. Laugel also told the plaintiff and Norman that she would meet them at the hospital shortly.

"The plaintiff and Norman then took the child to the University of Connecticut Health Center, John Dempsey Hospital (Dempsey Hospital), where the child was admitted on November 20, 1991. After approximately two hours at the hospital, Norman told the plaintiff that he had to go home and feed the animals and left the hospital. After remaining at home for approximately two hours, Norman then drove the plaintiff's car to Stratford, where he checked into a Days Inn at about 8:30 p.m. The following day, November 21, Norman drove around New York City and returned to the Days Inn in Stratford for the evening. On November 22, Norman drove to the Boston area and checked into a motel in Devon, Massachusetts. On November 23, three days after he had left the hospital, Norman returned to Dempsey Hospital. The doctors at Dempsey Hospital did not conclude that the child had been abused and released the child to the plaintiff on November 25. The child's

discharge diagnosis stated that he had suffered a fractured leg.[2]

"At the request of Laugel, the department of children and family services [department] conducted an investigation for abuse. After meeting with the child, the plaintiff, Norman, and several doctors at Dempsey Hospital, [the department] concluded that the origin of the child's injury was unknown and that abuse could not be confirmed." *Schult* v. *Schult*, supra, 40 Conn. App. 677–679.

On January 3, 1992, Radin intervened in the dissolution action, and the trial court, *Sequino, J.*, ordered that temporary joint custody be awarded to the plaintiff and the intervenor, with physical residence with the intervenor. The child has resided with the intervenor since January 3, 1992. Id., 677 n.2. On December 4, 1992, upon motion by the plaintiff, the trial court, *Jones, J.*, appointed Elizabeth Gleason as the child's guardian ad litem.

The trial began on November 1, 1993, before *Hon. Thomas J. O'Sullivan*, judge trial referee. At the trial, the guardian ad litem was called as a witness during the plaintiff's case-in-chief and testified that custody should be awarded to the plaintiff. The guardian ad litem was the only witness, other than the plaintiff and Norman, to testify that the child's safety would not be endangered by awarding custody to the plaintiff. Allen

---

[2] "The relevant part of the child's discharge diagnosis from Dempsey Hospital, dated November 25, 1991, provides as follows: 'Physical Examination: The physical exam on admission was significant for dry, cracked lips, bruises under the left eye and on the left hand dorsum about 5 x 5 cm in size, swollen right fourth digit with decreased flexion, left knee warm with decreased range of motion, left medial thigh with abrasion 5 cm above the knee, and bruising of the lateral aspect of the left thigh.

"A bone scan showed recent fracture of the left proximal tibia in the area of the growth plate. This fracture is also noted on x-ray. The bone scan also showed increased uptake in the distal ulna and in the fourth digit of the right hand. The left leg was splinted by Orthopaedics, and the patient was kept on bedrest.' " *Schult* v. *Schult*, supra, 40 Conn. App. 679 n.5.

Rubin, the family relations officer who conducted a review of the case, testified that it was in the child's best interest that custody be awarded to the intervenor. Sidney Horowitz, the child's and plaintiff's treating psychologist who conducted a court-ordered evaluation of the child, expressed serious concerns for the child's safety in Norman's presence and recommended that custody be awarded to the intervenor. Laugel testified that the child was not safe in the plaintiff's custody. Margaret Kunsch, the child's clinical social worker at the Parent Child Resource Center, testified that it would be detrimental to the child to remove him from the intervenor's custody. Kunsch also testified that the child considered "home" to be with the intervenor and had made "remarkable progress" within the past three months.

The child's attorney did not testify; rather, she participated in the trial by calling witnesses and conducting direct and cross-examination. The guardian ad litem and the plaintiff objected during the trial to the line of questioning by the child's attorney and requested that the trial court order her to ask the witnesses questions prepared by the guardian. The trial court, however, overruled their objections.

At the conclusion of the evidence, the trial court heard final arguments from all of the attorneys in the case, including the child's attorney, who argued that custody should be awarded to the intervenor. Both the plaintiff and the guardian ad litem objected to the closing argument by the child's attorney. The trial court overruled their objections.

The trial court rendered judgment granting sole custody to the intervenor pursuant to General Statutes § 46b-56b,[3] with visitation rights to the plaintiff and the

[3] General Statutes § 46b-56b provides: "Presumption re best interest of child to be in custody of parent. In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that

defendant.[4] In its memorandum of decision, the trial court found " 'as a fact that [the child's] leg was broken by [Norman], that [Norman] told [the plaintiff] when she came home what he had done and they both decided to tell the story that [the child's] leg was broken while [he] was alone in the bedroom in bed. When they told [Laugel] they did not know what happened to [the child], [Laugel] told them that she felt there was some abuse involved and that an investigation would be made for child abuse. They did not follow the doctor's order to go to Bridgeport Hospital but went eventually to [Dempsey Hospital] in Farmington. [Norman] left that hospital as soon as he could and testified that he wanted to get away, that he did not know what was going to happen to him. Under these circumstances, it is clear that it would not be in the best interest of [the child] for him to be given into [the plaintiff's] custody with [Norman] there, knowing that he got away with breaking [the child's] leg as the court has found and with the opportunity to abuse [the child] further. The court cannot conceive of a situation more detrimental to [the child] than to permit [the plaintiff] to have custody of [the child] now. Under the above circumstances, [the plaintiff] sided with [Norman] against [the child]. She should not be given the opportunity to do that again.' " *Schult* v. *Schult*, supra, 40 Conn. App. 680–81.[5]

it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody."

[4] "Although both the [plaintiff] and the [defendant] initially sought custody, the [defendant] eventually agreed that it was in the best interest of the child to award custody to the intervenor." *Schult* v. *Schult*, supra, 40 Conn. App. 677 n.4. Although the defendant was not a party to the appeal before the Appellate Court; id.; we permitted him to file a brief in this certified appeal.

[5] "Upon rendering judgment awarding sole physical and legal custody of the child to the intervenor, the trial court also ordered that the plaintiff shall have rights of 'reasonable visitation' with the child and specifically ordered that the plaintiff 'shall have visitation on Saturdays from 2:30 p.m. to 12:00 p.m. on Sundays, and one weekday afternoon per week.' On April 6, 1994, the plaintiff filed a motion for contempt and order, claiming that

In her appeal from the judgment of the trial court to the Appellate Court, the plaintiff claimed, inter alia,[6] that the trial court abused its discretion by allowing the child's attorney to argue against the recommendation of the child's guardian ad litem. Id., 686. The guardian ad litem filed a brief in support of the plaintiff's position, and argued that the trial court's decision to permit the child's attorney to make a recommendation contrary to that of the guardian ad litem prevented a fair trial on the question of custody. Id., 687. The Appellate Court concluded that the trial court did not abuse its discretion in allowing the attorney for the child to offer her recommendation concerning the custody of the child because there was no indication in the record that the attorney's recommendation was without a basis in fact or that the court relied solely on it. Id., 691–92.

The guardian ad litem filed a petition for certification to appeal from the judgment of the Appellate Court to this court.[7] We granted certification limited to the

the intervenor had wilfully failed to comply with the court's order of visitation. The intervenor then filed a motion for modification on May 26, 1994, requesting the court to terminate the plaintiff's right to overnight visitation. The intervenor's motion for modification also sought a court order preventing the plaintiff from conducting visitation at the plaintiff's residence and from conducting visitation when Norman is present. After conducting hearings, the trial court issued a second memorandum of decision on August 1, 1994, in which it denied the intervenor's motion for modification. The trial court did not grant the plaintiff's motion for contempt, and issued an order permitting the plaintiff to have the child for overnight visitation each weekend and for visitation one afternoon each week." *Schult* v. *Schult*, supra, 40 Conn. App. 681.

[6] The plaintiff also claimed that the trial court: (1) misconstrued § 46b-56b in concluding that the intervenor should have been awarded custody of the child; (2) failed to issue orders to assist the family in eventual reunification; and (3) improperly granted temporary custody of the minor child to the intervenor. The Appellate Court affirmed the trial court on all three of these issues. *Schult* v. *Schult*, supra, 40 Conn. App. 681–82. These issues are not before this court.

[7] Although we denied the plaintiff's petition for certification; *Schult* v. *Schult*, 237 Conn. 913, 675 A.2d 885 (1996); we permitted the plaintiff to file a brief in the guardian ad litem's certified appeal. We also approved the

following issue: "In an action for dissolution of a marriage, if a child is represented by both a guardian ad litem and an attorney, does the attorney for the child have the authority to express an opinion on behalf of the child that differs from the opinion of the guardian ad litem?" *Schult* v. *Schult*, 237 Conn. 912, 912–13, 675 A.2d 885 (1996). After reviewing the record and the parties' briefs, however, we rephrase the issue as follows: "In an action for dissolution of a marriage, if a child is represented by both a guardian ad litem and an attorney, may the trial court allow the child's attorney to advocate a position that is different than that recommended by the guardian ad litem?"[8] We answer the reformulated certified question in the affirmative. Accordingly, we affirm the judgment of the Appellate Court, although we do so on a different rationale.

The certified question presents an issue of first impression for this court. The guardian ad litem, plaintiff and amicus curiae urge us to adopt a bright line rule that prohibits a child's attorney from advocating a position that is contrary to that of the guardian ad litem. They argue that when a child is represented by both an attorney and a guardian ad litem in a custody

application of the Connecticut Chapter of the American Academy of Matrimonial Lawyers to file a brief as amicus curiae.

[8] In her petition for certification, the guardian ad litem presented the issue as involving whether the child's attorney has "the authority to express an opinion on behalf of the child." The use of this language, however, suggests that the child's attorney expressed an opinion by testifying as a witness or an expert. The child's attorney did not testify at trial, but, rather, she called witnesses, conducted direct and cross-examination and made a final argument. Following our review of the record and the parties' arguments on appeal, we conclude that the certified issue is more appropriately rephrased as involving whether the child's attorney may "advocate a position that is different than that recommended by the guardian ad litem." See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 648 n.1, 674 A.2d 821 (1996) (this court may rephrase certified questions in order to render them more accurate in framing issues that case presents); *Newman* v. *Newman*, 235 Conn. 82, 87, 663 A.2d 980 (1995) (same).

dispute, the guardian ad litem becomes the attorney's "client," and that, as the client, the guardian ad litem makes the decisions on behalf of the child, and the attorney must advocate those decisions. See American Academy of Matrimonial Lawyers, "Representing Children: Standards for Attorneys and Guardians Ad Litem in Custody or Visitation Proceedings," 13 J. Am. Acad. Matrim. L. 1, 27–28 (1995) (where child represented by attorney and guardian ad litem, attorney must represent guardian as litem as if guardian ad litem were client).

Although we recognize the appeal that a bright line rule would have for practitioners, clients and judges alike, we cannot blind ourselves to the fact that custody disputes involving minor children often do not lend themselves to easy, bright line solutions. We reject a rule that would unduly restrict the trial court's ability to receive information that might aid it in determining where the best interests of a child lie. Therefore, we decline to adopt the bright line rule requested by the guardian ad litem, plaintiff and amicus, and, instead, hold that it is within the trial court's discretion to determine, on a case-by-case basis, whether such dual, conflicting advocacy of position is in the best interests of the child.

The guiding principle in determining custody is the best interests of the child. "In making or modifying any order with respect to custody or visitation, the court shall . . . be guided by the best interests of the child . . . ." General Statutes § 46b-56 (b) (1); see also *Knock* v. *Knock*, 224 Conn. 776, 789, 621 A.2d 267 (1993); *Yontef* v. *Yontef*, 185 Conn. 275, 282, 440 A.2d 899 (1981). The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. *Cappetta* v. *Cappetta*, 196 Conn. 10, 16, 490 A.2d 996 (1985). The trial court is vested with broad discretion in determining what is in the child's best interests. *Presutti* v. *Presutti*,

181 Conn. 622, 627, 436 A.2d 299 (1980); *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980).

This principle also governs the appointment of counsel for a minor child in a marriage dissolution action. "The court may appoint counsel for any minor child . . . if the court deems it to be in the best interests of the child . . . ." General Statutes § 46b-54 (a). The appointment of counsel lies firmly within the trial court's discretion in the best interests of the child. *Salvio* v. *Salvio*, 186 Conn. 311, 325 n.12, 441 A.2d 190 (1982); *Yontef* v. *Yontef*, supra, 185 Conn. 284; *Ridgeway* v. *Ridgeway*, supra, 180 Conn. 540. Counsel may also be appointed "when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . ." General Statutes § 46b-54 (b). The statute further provides that "[c]ounsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child." General Statutes § 46b-54 (c). The purpose of appointing counsel for a minor child in a dissolution action is to ensure independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation. *Knock* v. *Knock*, supra, 224 Conn. 791. The opinion of counsel is not binding on the trial court. *Blake* v. *Blake*, 207 Conn. 217, 224, 541 A.2d 1201 (1988).

The appointment of a guardian ad litem is neither required nor specifically authorized in chapter 815j of the General Statutes, which governs the resolution of custody disputes. See generally General Statutes §§ 46b-40 through 46b-87a. The appointment of a guardian ad litem is authorized, however, pursuant to General Statutes § 45a-132 (a), which provides that the court may

appoint a guardian ad litem for a minor or incompetent "[i]n any proceeding before a court of probate or the Superior Court including the Family Support Magistrate Division . . . ." The appointment of a guardian ad litem lies within the discretion of the trial court. General Statutes § 45a-132 (b). Likewise, the guardian ad litem may be removed by the trial court whenever it appears to the court to be in the best interests of the child to do so. General Statutes § 45a-132 (f).

Although this court has not previously delineated the exact roles of the attorney for the child and the guardian ad litem, we have recognized the potential for conflict between these roles when both are appointed by the court. See *Newman* v. *Newman*, 235 Conn. 82, 101, 663 A.2d 980 (1995) ("there may be instances in which the functions of counsel for minor children differ fundamentally from those of a guardian ad litem"); *Knock* v. *Knock*, supra, 224 Conn. 791 ("[t]he legislature has not delineated, nor has this court yet been presented with the opportunity to delineate, the obligations and limitations of the role of counsel for a minor child").

In *Newman*, for example, the issue was whether, in the absence of a guardian ad litem, an attorney for the minor children could prosecute an appeal from a judgment modifying a father's support obligations. In determining this issue, we expressed concern "about creating conflict in the attorney's role by conflating the role of counsel for a child with the role of a guardian ad litem or next friend. Typically, the child's attorney is an advocate for the child, while the guardian ad litem is the representative of the child's best interests. As an advocate, the attorney should honor the strongly articulated preference regarding taking an appeal of a child who is old enough to express a reasonable preference; as a guardian, the attorney might decide that, despite such a child's present wishes, the contrary course of action would be in the child's long term best

interests, psychologically or financially. We recognized a similar concern in *State* v. *Garcia*, 233 Conn. 44, 90 n.36, 658 A.2d 947 (1995), in which we concluded that, because his legal interests and medical interests may diverge, an incompetent criminal defendant should have both legal counsel to represent his legal, or expressed, interests, and a guardian appointed to represent his medical, or best, interests. See also A. Lurie, 'Representing the Child-Client: Kids are People Too,' 11 N.Y.L. Sch. J. Hum. Rts. 205 (1993)." *Newman* v. *Newman*, supra, 235 Conn. 96–97.

To resolve the issue presented in *Newman*, we turned to § 46b-54 for guidance. "[T]he fact that, in the trial court, the law deems it sufficient to protect [children's interests in dissolution proceedings] by way of an appointment of an attorney, rather than also requiring a simultaneous appointment of a guardian ad litem or the naming of a next friend, is an implicit recognition that, under most circumstances, that attorney is an appropriate adult to provide such protection." Id., 97. We adopted the best interests of the child standard enunciated in § 46b-54 and concluded that, although generally minor children may not appeal from a trial court order in the absence of a guardian ad litem, counsel appointed pursuant to § 46b-54 may file an appeal on behalf of the minor children provided that the trial court determines that such an appeal is in the children's best interests. Id., 104.

Applying this analysis to the present case, we conclude that, where the court has appointed both an attorney and a guardian ad litem to represent a child in a dissolution action, the attorney for the child may advocate a position different from that of the guardian ad litem so long as the trial court determines that it is in the best interests of the child to permit such dual, conflicting advocacy. Leaving the determination to the sound discretion of the trial court is particularly

important in those difficult cases, such as the present one, in which the child is unable to state a preference directly, there is an allegation of child abuse, and the parties present drastically differing views of the events. In such situations, it may be particularly difficult for the trial court to determine where the best interests of the child lie. To aid the court in its duty to determine the best interests of the child for purposes of custody, it may be helpful to the trial court to hear the contradictory positions of the attorney and the guardian ad litem. The trial court is in the best position to evaluate the child's needs for representation as the case and the evidence unfold.

In the present case, it is important to note the context in which the attorney and the guardian ad litem were appointed. The minor child suffers from emotional, psychological and developmental problems. Custody of the child was initially contested by the plaintiff and the defendant. At the request of the defendant, the court appointed the attorney for the child pursuant to § 46b-54. Following the intervention by Radin, custody became bitterly contested between the plaintiff and the intervenor, with the defendant siding with the intervenor. The custody battle centered largely around whether the child would be safe in the plaintiff's custody in light of allegations of abuse against the plaintiff's live-in boyfriend. At the request of the plaintiff, the court then appointed the guardian ad litem for the child.

During the course of the trial, the trial referee frequently stated that the case was a very difficult one and that he intended to "hear everyone" on the issues. The guardian ad litem was heard on the issues relating to the child's custody. She was called as a witness in the plaintiff's case-in-chief and testified that she saw no danger in the child being in the plaintiff's custody. Furthermore, she was not the only actor to present that position, which was the same as that advocated by the

plaintiff. In addition, there was adequate evidence in the record to support the position of the child's attorney that custody should be awarded to the intervenor. Several experts testified that they had serious reservations about returning the child to the plaintiff's care in light of unanswered questions surrounding the incident of alleged abuse. In fact, the trial court specifically found that Norman had broken the child's leg and that the plaintiff had cooperated in the cover-up of that serious abuse. Finally, the position advocated by the child's attorney was the same as that taken by the attorneys for the intervenor and the defendant. In such circumstances, we cannot conclude that the trial court abused its discretion in hearing from the child's attorney and the guardian ad litem, despite their contrary positions, in making its decision regarding the best interests of the child concerning custody.

The guardian ad litem, plaintiff and amicus nonetheless argue that the Connecticut Rules of Professional Conduct require counsel to advocate for the position of the guardian ad litem. In support of this argument, they point to rules 1.2 and 1.14[9] of the Connecticut

---

[9] Rule 1.2 of the Rules of Professional Conduct provides in relevant part: "Scope of Representation

"(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify. . . .

"(c) A lawyer may limit the objectives of the representation if the client consents after consultation. . . .

"(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct."

Rule 1.14 of the Rules of Professional Conduct provides: "Client under a Disability

"(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority,

Rules of Professional Conduct. Rule 1.2 requires an attorney to abide by a client's decision with respect to the objectives of the representation. Rule 1.14 requires the attorney representing a client under a disability, which includes minority, to maintain a lawyer-client relationship that is as normal as possible. When the client cannot act in his or her own interest, rule 1.14 permits, but does not require, the attorney to seek the appointment of a guardian. The official comment to rule 1.14 provides that, where the client has a legal representative, such as a guardian ad litem, "the lawyer should ordinarily look to the representative for decisions on behalf of the client." Rules of Professional Conduct 1.14, comment (1995). The guardian ad litem argues that, because she was appointed as the legal representative of the child, the child's attorney was ethically bound to follow her recommended position.

Our review of the rules, however, does not lead us ineluctably to the result advocated by the guardian ad litem. At the most, the rules merely recognize that there will be situations in which the positions of the child's attorney and the guardian may differ. See, e.g., Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 94-29 (1994) (recommending that attorney seek appointment of guardian where child expresses interests that attorney believes is contrary to child's best interests). At the least, the rules neither contemplate nor answer the problem posed in the present case. Although we agree that *ordinarily* the attorney should look to the guardian, we do not agree that the rules require such action in every case. This case is one of those unusual situations. There was no evi-

mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

"(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest."

dence that the child's attorney had been unable to determine the child's interests from her review of the expert reports, medical records and school records. Furthermore, the guardian ad litem was appointed by the court at the request of the plaintiff, not at the request of the child's attorney. In light of the trial court's finding that the plaintiff's boyfriend had abused the child, and that the plaintiff had sided with the boyfriend against the safety of the child, we cannot conclude that the attorney for the child should have been prevented from advocating that custody not be awarded to the plaintiff.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.