PAUL CARRUBBA ET AL. *v.*
EMILY J. MOSKOWITZ
(SC 17157)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 12—officially released July 26, 2005

*George W. Kramer*, for the appellants (plaintiffs).

*Robert J. Kor*, for the appellee (defendant).

*Steven R. Dembo* and *Campbell D. Barrett* filed a brief for the Children's Law Center as amicus curiae.

*Opinion*

BORDEN, J. The named plaintiff, Paul Carrubba, acting individually and as parent and next friend of his minor son, Matthew Carrubba,[1] appeals, following our grant of certification,[2] from the judgment of the Appellate Court affirming the trial court's judgment granting the motion to dismiss of the defendant, Emily J. Moskowitz. The plaintiff claims that the Appellate Court improperly concluded that: (1) the defendant, who had been appointed by the trial court pursuant to General

---

[1] Because Paul Carrubba is the sole plaintiff under both counts of the complaint, albeit in two different capacities, hereafter we refer to him as the plaintiff.

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issues: "(1) Did the Appellate Court properly conclude that the defendant was entitled to qualified immunity?" and "(2) Did the Appellate Court properly conclude that the plaintiff lacked standing to bring this legal malpractice action against the defendant?" *Carrubba* v. *Moskowitz*, 268 Conn. 916, 847 A.2d 310 (2004).

Statutes § 46b-54[3] to represent the plaintiff's minor children in a prior marital dissolution action, was entitled to qualified, quasi-judicial immunity in the action against her for intentional and negligent infliction of emotional distress; and (2) the plaintiff, acting on behalf of Matthew Carrubba as his parent and next friend, lacked standing to assert a claim of legal malpractice against the defendant. We affirm the judgment of the Appellate Court, although we reach a different conclusion regarding the scope of the immunity to which the defendant is entitled.

The Appellate Court set forth the following relevant facts and procedural history. "In the prior marital dissolution action between [the plaintiff] and his former wife, *Carrubba* v. *Carrubba*, Superior Court, judicial district of Hartford, Docket No. 541518 (September 2, 1994), the defendant served as court-appointed counsel for the minor children, Jessica Carrubba and Matthew Carrubba. The marriage was dissolved on February 11, 1997. On November 2, 1998, in a postjudgment motion,

---

[3] General Statutes § 46b-54 provides: "(a) The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

[the plaintiff] sought to disqualify the defendant.[4] The court denied the motion.

"On November 13, 2000, the [plaintiff] commenced the present action by filing a two count complaint. In the first count, the [plaintiff] claimed that the defendant intentionally or negligently had caused [the plaintiff] to suffer emotional distress. In the second count, Matthew Carrubba, through his father and next friend, [the plaintiff], alleged legal malpractice against the defendant. On December 12, 2000, the defendant filed a motion to dismiss the action. The court granted the defendant's motion as to both counts and subsequently denied the [plaintiff's] motion to reargue." *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 384–85, 840 A.2d 557 (2004). Additional facts will be set forth as necessary.

The plaintiff then appealed to the Appellate Court, which affirmed the judgment of the trial court. Id., 384. The Appellate Court concluded that, as to the first count, the defendant was entitled to qualified, quasi-judicial immunity; id., 385; and, as to the second count, that the plaintiff lacked standing to sue on behalf of his son. Id., 401. This certified appeal followed.

---

[4] "[The plaintiff] sought to disqualify the defendant because (1) Matthew Carrubba's therapist had indicated to [the plaintiff] that it may not have been in the child's best interest for the defendant to represent him, (2) the defendant had verbally insulted [the plaintiff], (3) the defendant had a conflict of interest because the law firm of Berman, Bourns and Currie, the same firm that represented [the plaintiff's] former wife, Andrea Carrubba, represented the defendant as a client, (4) the defendant had acted as a de facto guardian ad litem as opposed to an attorney, (5) the defendant had recommended that [the plaintiff] seek counseling prior to Matthew Carrubba's return, (6) the defendant had misrepresented that Matthew Carrubba was doing well at home with Andrea Carrubba, (7) the defendant improperly stated that the Institute of Living, a mental health facility in Hartford, had requested her to terminate [the plaintiff's] parental rights and (8) the defendant was biased against [the plaintiff]." *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 384 n.1, 840 A.2d 557 (2004).

## I

The plaintiff first claims that the Appellate Court improperly concluded that the defendant, who had been appointed by the trial court to represent the minor children pursuant to § 46b-54 in the prior dissolution action, was entitled to qualified, quasi-judicial immunity. We agree with the Appellate Court that the defendant was entitled to immunity, but we disagree as to the proper scope of the immunity. We conclude that attorneys appointed by the court pursuant to § 46b-54 are entitled to absolute, quasi-judicial immunity for actions taken during or, activities necessary to, the performance of functions that are integral to the judicial process.

We first note that, in the trial court, the defendant raised the defense of immunity in her motion to dismiss. Id., 399. Because the Appellate Court determined that the defendant was entitled only to qualified immunity, it also concluded that, in the future, the proper procedural vehicle through which attorneys appointed pursuant to § 46b-54 could raise immunity would be as a special defense, not through a motion to dismiss. It is unnecessary for us, however, in resolving the present case, to consider whether a motion to dismiss was the proper procedural vehicle by which to raise absolute immunity because that question is not presented in this appeal. The plaintiff waived any claim of procedural error by requesting that the trial court address the merits of the motion, despite the plaintiff's simultaneous contention that a motion to dismiss was not a proper procedural vehicle by which to raise the defense.[5]

---

[5] The Appellate Court noted that the plaintiff stated in his brief to the trial court: "The trial court dismissed the first count of the [plaintiff's] complaint, holding that [the defendant's] actions in that role should be protected from tort liability. The issue of judicial immunity, however, does not implicate the court's jurisdiction. The court treated the defendant's motion to dismiss as a motion to strike or a motion for summary judgment. In doing so, the [plaintiff believes] that court [acted improperly]. *For the sake of judicial economy, however, the [plaintiff asks] the Appellate Court*

Section 46b-54 (a) provides that "[t]he court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, *if the court deems it to be in the best interests of the child or children. . . .*" (Emphasis added.) In analyzing this statutory language, we have stated that the guiding principle governing the appointment of counsel for a minor child in a marital dissolution action is the best interests of the child. *Schult* v. *Schult*, 241 Conn. 767, 777, 699 A.2d 134 (1997). "The appointment of counsel lies firmly within the trial court's discretion in the best interests of the child. . . . Counsel may also be appointed 'when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . .' General Statutes § 46b-54 (b). The statute further provides that '[c]ounsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child.' General Statutes § 46b-54 (c). The purpose of appointing counsel for a minor child in a dissolution action is to ensure independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation." (Citations omitted.) *Schult* v. *Schult*, supra, 778.

We also have recognized the dual role imposed upon attorneys appointed pursuant to § 46b-54. In *Schult* v. *Schult*, supra, 241 Conn. 776, for example, we concluded that, in an action for dissolution of marriage, an attorney appointed by the court pursuant to § 46b-54 may advo-

---

to address the issue of whether attorneys for minor children are entitled to judicial immunity." (Emphasis in original; internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 399.

cate for a position different from that recommended by the guardian ad litem. In our analysis, we recognized the dual responsibilities of the court-appointed attorney for a minor child both to safeguard the child's best interests and to act as an advocate for the child. Id., 778–79. "As an advocate, the attorney should honor the strongly articulated preference regarding taking an appeal of a child who is old enough to express a reasonable preference; as a guardian, the attorney might decide that, despite such a child's present wishes, the contrary course of action would be in the child's long term best interests, psychologically or financially." Id., 779–80. The tension between these dual roles imposed upon the attorney appointed pursuant to § 46b-54 became apparent in *Ireland* v. *Ireland*, 246 Conn. 413, 438–39, 717 A.2d 676 (1998), in which we concluded that it was improper for an attorney appointed pursuant to § 46b-54 to submit an unsolicited report to the court, supported only by his personal opinion, containing a conclusion as to the proper outcome of the case. In that context, although we recognized the principle that an attorney for the child should provide " 'independent representation of the child's interests,' " we concluded that, regarding the *manner* in which an attorney for the minor child may present information to the court, "such representation is limited to the type of representation enjoyed by unimpaired adults. In other words, the attorney for the child is just that, an attorney, arguing on behalf of his or her client, based on the evidence in the case and the applicable law." Id., 438. We must determine in the present case whether it is the duty of the attorney to serve the best interests of the child, or her duty to act as the child's advocate, that controls for purposes of determining whether she is entitled to immunity and, if so, what level of immunity.

Because any immunity accorded to attorneys appointed pursuant to § 46b-54 would be derived from

judicial immunity, we first examine the policy reasons underlying judicial immunity.[6] It is well established that "a judge may not be civilly sued for judicial acts he undertakes in his capacity as a judge." *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 630, 749 A.2d 630 (2000). This role of judicial immunity serves "to promote principled and fearless decision-making by removing a judge's fear that unsatisfied litigants may hound him with litigation charging malice or corruption . . . ." (Internal quotation marks omitted.) *Spring* v. *Constantino*, 168 Conn. 563, 565, 362 A.2d 871 (1975). Although we have extended judicial immunity to protect other officers in addition to judges, that extension generally has been very limited. "This fact reflects an [awareness] of the salutary effects that the threat of liability can have . . . as well as the undeniable tension between official immunities and the ideal of the rule of law . . . . The protection extends only to those who are intimately involved in the judicial process, including judges, prosecutors and judges' law clerks. Absolute judicial immunity, however, does not extend to every officer of the judicial system." (Citation omitted; internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 631. Furthermore, even judges are not entitled to immunity for their administrative actions, but only for their judicial actions. Id.

We repeatedly have recognized that "[a]bsolute immunity . . . is strong medicine . . . ." (Internal quotation marks omitted.) Id.; see also *DeLaurentis* v. *New Haven*, 220 Conn. 225, 242, 597 A.2d 807 (1991).

[6] The parties have not presented the question of whether, irrespective of any immunity, the defendant owed the plaintiff any duty of care. Cf. *Zamstein* v. *Marvasti*, 240 Conn. 549, 559, 692 A.2d 781 (1997) (court-appointed psychiatrist who had performed evaluation of plaintiff's children to determine whether they had been sexually abused owed plaintiff no duty of care, because imposing such duty would be contrary to state's public policy of encouraging reporting and investigation of suspected child abuse). Thus, we need not decide that issue.

Therefore, not every category of persons protected by immunity are entitled to *absolute* immunity. In fact, just the opposite presumption prevails—categories of persons protected by immunity are entitled only to the scope of immunity that is necessary to protect those persons in the performance of their duties. "[T]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 36, 818 A.2d 37 (2003); see also General Statutes § 4-165.[7] In limited circumstances, however, courts have extended absolute judicial immunity to officials insofar as they perform actions that are integral to the judicial process. *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 567–68, 663 A.2d 317 (1995). For example, because prosecutors are such an "integral part of the judicial system"; id., 567; this court has repeatedly recognized that they are entitled to absolute immunity "for their conduct as participants in the judicial proceeding." *DeLaurentis* v. *New Haven*, supra, 242; see also *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 252 Conn. 631; *Spring* v. *Constantino*, supra, 168 Conn. 563. By contrast, we declined to extend immunity to public defenders, reasoning that, unlike a prosecutor, who is a " 'representative of the state,' " and has a "duty to see that impartial justice is done to the accused as well as to the state," a public defender's "role is that of an adversary and his function does not differ from that of a privately retained attorney." *Spring* v. *Constantino*, supra, 566–67. In legislatively overruling *Spring*, the legislature granted public defenders only qualified immunity, impliedly deeming that level of protection to

---

[7] General Statutes § 4-165, which grants qualified immunity to state officers and employees, provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ."

be sufficient to protect them in the exercise of their duties.[8]

Although the presumption is that qualified immunity is sufficient to protect most government officials in the justified performance of their duties, courts have extended absolute immunity to a variety of judicial and quasi-judicial officers. See, e.g., *Babcock* v. *Tyler*, 884 F.2d 497 (9th Cir. 1989) (court-appointed social worker), cert. denied, 493 U.S. 1072, 110 S. Ct. 1118, 107 L. Ed. 2d 1025 (1990); *Moses* v. *Parwatikar*, 813 F.2d 891 (8th Cir.) (court-appointed psychologist), cert. denied, 484 U.S. 832, 108 S. Ct. 108, 98 L. Ed. 2d 67 (1987); *Demoran* v. *Witt*, 781 F.2d 155 (9th Cir. 1986) (probation officer); *Boullion* v. *McClanahan*, 639 F.2d 213 (5th Cir. 1981) (bankruptcy trustee); *T & W Investment Co.* v. *Kurtz*, 588 F.2d 801 (10th Cir. 1978) (court-appointed receiver); *Burkes* v. *Callion*, 433 F.2d 318 (9th Cir. 1970) (court-appointed medical examiner), cert. denied, 403 U.S. 908, 91 S. Ct. 2217, 29 L. Ed. 2d 685 (1971). The determining factor in all these decisions is whether the official was performing a function that was integral to the judicial process.

In considering whether officials sued under 42 U.S.C. § 1983 should be accorded absolute judicial immunity, the United States Supreme Court has applied a three factor test, which we now adopt for the purpose of determining whether an attorney appointed pursuant to § 46b-54 should be accorded absolute immunity under our state common law. In its immunity analysis, the court has inquired: "[1] whether the official in question perform[s] functions sufficiently comparable to those of officials who have traditionally been afforded absolute immunity at common law . . . [2] whether

---

[8] The legislature, through the enactment of Public Acts 1976, No. 76-371, § 2, added public defenders to the definition of "state officers and employees" entitled to qualified, statutory sovereign immunity pursuant to § 4-165.

the likelihood of harassment or intimidation by personal liability [is] sufficiently great to interfere with the official's performance of his or her duties . . . [and 3] whether procedural safeguards [exist] in the system that would adequately protect against [improper] conduct by the official." C. English, "Mediator Immunity: Stretching the Doctrine of Absolute Quasi-judicial Immunity: *Wagshal* v. *Foster*," 63 Geo. Wash. L. Rev. 759, 766 (1995), citing to *Butz* v. *Economou*, 438 U.S. 478, 513–17, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978).

For the sake of clarity, we first consider the second and third prongs of the test, both of which support granting absolute immunity to attorneys appointed pursuant to § 46b-54. First, a substantial likelihood exists that subjecting such attorneys to personal liability will expose them to sufficient harassment or intimidation to interfere with the performance of their duties. In fact, the threat of litigation from a disgruntled parent, unhappy with the position advocated by the attorney for the minor child in a custody action, would be likely not only to interfere with the independent decision making required by this position, but may very well deter qualified individuals from accepting the appointment in the first instance. Second, there exist sufficient procedural safeguards in the system to protect against improper conduct by an attorney for the minor child. Because the attorney is appointed by the court, she is subject to the court's discretion and may be removed by the court at any time. Additionally, the attorney for the minor child, just as any other attorney, is subject to discipline for violations of the Code of Professional Conduct.

The first prong of the test, the functional inquiry, by its very nature, must be performed on a case-by-case basis. *Gardner* v. *Parson*, 874 F.2d 131, 146 (3d Cir. 1989). In performing its functional analysis, the Appellate Court considered the general nature of the func-

tions performed by attorneys for a minor child. Although we consider the Appellate Court's analysis relevant to the initial determination of whether such attorneys as a class of individuals are entitled to immunity, the functional inquiry ultimately hinges on the relevant functions performed by the defendant in the present case. By illustration, as we explain later in this opinion, courts have generally accorded guardians ad litem absolute immunity. They have done so, however, by directing a functional inquiry to the specific facts of the case. For example, one court stated that under the functional approach, guardians ad litem "would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." Id. Absolute immunity would not be available, however, when persons who would normally be accorded immunity "perform acts which are clearly outside the scope of their jurisdiction." *Cok* v. *Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989).

As for the general function of attorneys appointed pursuant to § 46b-54, the Appellate Court correctly points out that such attorneys differ from privately retained attorneys in general and public defenders in particular in that attorneys for minor children "[serve] at the discretion of the court" and therefore have less independence than public defenders in representing their clients. *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 391. Because, as we have explained, the statute provides that the appointment is for the purpose of promoting the best interests of the child, the representation of the child must always be guided by that overarching goal, despite the dual role required of the attorney for the minor child. Thus, the appointed attorney's duty to secure the best interests of the child dictates that

she must be more objective than a privately retained attorney. Furthermore, because the overall goal of serving the best interests of the child always guides the representation of the child, the dual obligations imposed on the attorney for a minor child, namely, to assist the court in serving the best interests of the child and to function as the child's advocate, are not easily disentangled. In other words, the duty to secure the best interests of the child does not cease to guide the actions of the attorney for the minor child, even while she is functioning as an advocate. Thus, as the Appellate Court noted, in this respect, the attorney for the minor child "functions in a manner vastly different from that of a privately retained attorney or public defender. We agree with the views on that issue expressed by other courts that have stated that '[w]hen a statute gives a court the power to appoint an attorney for children in [dissolution or] custody disputes, that advocate must represent the children's interests alone. In so doing, the attorney is not to take a passive role but should present all evidence available concerning the child's best interests. The attorney is not simply to parrot the child's expressed wishes. . . . Thus, this obligation imposes a higher degree of objectivity on a child's attorney than that for an attorney representing an adult.' . . . *In re Marriage of Barnthouse*, 765 P.2d 610, 612 (Colo. App. 1988), cert. denied, 490 U.S. 1021, 109 S. Ct. 1747, 104 L. Ed. 2d 184 (1989)." *Carrubba* v. *Moskowitz*, supra, 391–92.

In its discussion of the proper scope of the immunity that should be accorded to attorneys for minor children appointed by the court pursuant to § 46b-54, however, the Appellate Court simply stated, with no further elaboration, that based on its thorough review of the functions of attorneys for minor children, that "qualified [immunity] rather than absolute immunity should apply." Id., 396. This conclusion, however, is inconsis-

tent with the Appellate Court's stated reasons for according such attorneys immunity in the first place. That is, the primary reason that led the court to conclude that court-appointed attorneys for minor children are entitled to quasi-judicial immunity was that they perform functions integral to the judicial process in carrying out the purpose of § 46b-54—to assist the court in determining and serving the best interests of the child. Id., 392–93. We traditionally have recognized that individuals who perform such functions should be accorded absolute, not qualified immunity. See, e.g., *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 567–68 (discussing absolute immunity accorded to prosecutors by United States Supreme Court); *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 252 Conn. 631 (noting that judges' law clerks are entitled to absolute immunity).

Furthermore, we agree with the Appellate Court that, in the performance of this function, for the purposes of an immunity analysis, the court-appointed attorney for the minor child most closely resembles a guardian ad litem. *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 394. Of course, we recognize that such attorneys perform a hybrid role because of their simultaneous duty to function as an advocate for the child. That function, however, must always be subordinated to the attorney's duty to serve the best interests of the child. Even when an attorney for the minor child functions less as a guardian ad litem and more as an advocate because of factors such as the child's advanced age, maturity level and ability to articulate her preferences, the shifting of the balance from an objective evaluator of the child's best interests to personal advocate happens because those factors increase the likelihood that the child is able accurately to identify and to make choices to pursue her own best interests independently, without the aid of an objective assistant to the court. Thus, even the

advocacy role of the appointed attorney for the minor child may be reconciled with the attorney's primary duty—to assist the court in serving the best interests of the child. Therefore, we see no reason to accord appointed attorneys for minor children a lesser level of immunity than that traditionally accorded to guardians ad litem, at least in the performance of those functions that are integral to the judicial process.

Courts in other jurisdictions have almost unanimously accorded guardians ad litem absolute immunity for their actions that are integral to the judicial process. See, e.g., *Fleming* v. *Asbill*, 42 F.3d 886, 889 (4th Cir. 1994);[9] *Cok* v. *Cosentino*, supra, 876 F.2d 3; *Gardner* v. *Parson*, supra, 874 F.2d 131; *Myers* v. *Morris*, 810 F.2d 1437, 1466–67 (8th Cir.), cert. denied, 484 U.S. 828, 108 S. Ct. 97, 98 L. Ed. 2d 58 (1987); *Kurzawa* v. *Mueller*, 732 F.2d 1456, 1457–58 (6th Cir. 1984); *Babbe* v. *Peterson*, 514 N.W.2d 726 (Iowa 1994); *Tindell* v. *Rogosheske*, 428 N.W.2d 386, 387 (Minn. 1988); *Billups* v. *Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997); *Collins* v. *Tabet*, 111 N.M. 391, 806 P.2d 40 (1991). Courts have reasoned that the duty of a guardian ad litem to secure the best interests of the minor children places the guardian "squarely within the judicial process to accomplish that goal"; *Kurzawa* v. *Mueller*, supra, 1458; and, therefore, that a grant of absolute immunity is both appropriate and necessary in order to ensure that the guardian will be able to "function without the worry of possible later harassment and intimidation from dissatisfied parents." Id. One court noted its concern that "[w]ithout immunity, guardians ad litem would act like litigation

---

[9] Although the United States Court of Appeals for the Fourth Circuit found that the guardian ad litem had absolute immunity for purposes of 42 U.S.C. § 1983, it also found that the guardian was not entitled to immunity under state law because both the common law and applicable statutes of South Carolina make clear that a guardian ad litem is liable to his or her ward for negligent performance of the guardian's duties. *Fleming* v. *Asbill*, supra, 42 F.3d 889.

lightening rods. Lawsuits would, in the words of Learned Hand, 'dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.' *Gregoire* v. *Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S. Ct. 803, 94 L. Ed. 1363 (1950)." *Short* v. *Short*, 730 F. Sup. 1037, 1039 (D. Colo. 1990). These same reasons support the extension of the same scope of immunity to attorneys appointed pursuant to § 46b-54. We now consider the particular, relevant functions performed by the defendant in the present case.

The plaintiff alleged in the complaint that the defendant: (1) insulted him and called him names during several meetings at which all three counsel were present;[10] (2) insisted that the plaintiff enter into counseling, despite the fact that no therapist had made such a recommendation; (3) made negligent and reckless misrepresentations about the plaintiff to the court on various occasions; (4) was represented as a client by the same law firm that represented the plaintiff's former spouse; and (5) acted as a de facto guardian ad litem. The first three allegations do not allege that the defendant acted outside of her function as an attorney for the minor children. The fourth allegation, that she was represented by the same firm that represented the plaintiff's former spouse, does not give rise to a cause of action for intentional or negligent infliction of emotional distress. The last allegation, that she acted as a de facto guardian ad litem, is not, as we have noted previously, inconsistent with her role as an attorney for the minor children. All of the allegations, with the exception of the conflict of interest claim, basically express dissatisfaction with the manner in which the defendant carried out her court-appointed role. Moreover, the fact that some of the allegations of the com-

---

[10] The plaintiff alleges that the defendant called him an " '[a]sshole,' " a " '[b]astard,' " and stated that the plaintiff was " '[k]illing these kids.' "

plaint claim that she did so in an intentional, rather than a merely negligent manner, does not defeat absolute immunity. See *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 790, 865 A.2d 1163 (2005) (noting that distinction between qualified immunity and absolute immunity is that persons protected by latter immunity are not liable for malicious "conduct and statements"); *Spears* v. *Garcia*, supra, 263 Conn. 36 (identifying exception to municipal employees' immunity " 'where the alleged acts involve malice, wantonness or intent to injure, rather than negligence' " and concluding that qualified, rather than absolute immunity, applied). Therefore, because the complaint was not grounded on any conduct by the defendant in which she acted outside the usual role of an attorney for the minor children, she is entitled to absolute immunity.

## II

The plaintiff next claims that the Appellate Court improperly concluded that the trial court properly granted the defendant's motion to dismiss when the Appellate Court determined that the plaintiff, as next friend of Matthew Carrubba, lacked standing to bring a legal malpractice claim against the defendant. We disagree.

The Appellate Court set forth the following relevant additional facts: "[The plaintiff] brought count two of the complaint on behalf of his son, Matthew Carrubba. The count alleged that during the custody and dissolution action, *Carrubba* v. *Carrubba*, supra, Superior Court, Docket No. 541518, the defendant deviated from the standard of care required by attorneys who represent minor children. In its memorandum of decision, the court concluded that the plaintiff . . . did not have standing because (1) his interests were adverse to his child's interests and (2) he failed to demonstrate preju-

dice to his own case." *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 401.

The Appellate Court agreed with the trial court that the plaintiff lacked next friend standing to bring the action because his interests were adverse to those of the child, Matthew Carrubba. We agree with the Appellate Court that the proper test for determining whether a person is the proper party to bring an action on behalf of a minor child as a guardian or next friend is "whether that person's interests are adverse to those of the child"; id., 402; and we also agree that, because the plaintiff's interests were adverse to those of Matthew Carrubba, he lacked standing to bring the action on behalf of Matthew Carrubba as his next friend.

"If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to

ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that] he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citation omitted; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 153–54, 851 A.2d 1113 (2004).

We recently noted that the United States Supreme Court, in *Whitmore* v. *Arkansas*, 495 U.S. 149, 110 S.

Ct. 1717, 109 L. Ed. 2d 135 (1990), stated that, "to establish next friend status, a person: (1) 'must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate . . . [and] must have some significant relationship with the real party in interest'; id., 163–64; and (2) 'must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.' Id., 163." *In re Application for Writ of Habeas Corpus by Dan Ross*, 272 Conn. 653, 659–60 n.7, 866 A.2d 542. Under normal circumstances, parents of a minor child satisfy both prongs of this test because they are presumed to act in the best interests of the minor child.

We agree with the Appellate Court, however, that, in a custody dispute, "parents lack the necessary professional and emotional judgment to further the best interests of their children. Neither parent could be relied on to communicate to the court the children's interests where those interests differed from his or her own. . . . A parent's judgment is or may be clouded with emotion and prejudice due to the estrangement of husband and wife." (Internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, supra, 81 Conn. App. 402–403. The Appellate Court also correctly points out that "[t]he defendant was responsible for undertaking actions that represented the best interest of the minor, Matthew Carrubba, and it was precisely those actions to which [the plaintiff] had objected." Id., 404. "If parents could penetrate the shield of immunity merely by bringing suit in the child's name, that tactic would undermine the public policy goals supporting the immunity"; id.; which we granted in part I of this opinion. Therefore, because the plaintiff's interests are adverse to the minor

child, he lacks standing to bring a claim of legal malpractice on the child's behalf as next friend.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.